**BUCKLEY LLP**
JAMES R. McGUIRE (State Bar No. 189275)
jmcguire@buckleyfirm.com
SARAH N. DAVIS (State Bar No. 275145)
sdavis@buckleyfirm.com
LAUREN L. ERKER (State Bar No. 291019)
lerker@buckleyfirm.com
201 Mission Street, 12th Floor
San Francisco, CA 94105
Telephone: (415) 619-3500
Facsimile: (415) 619-3505

MICHAEL A. ROME (State Bar No. 272345)
mrome@buckleyfirm.com
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Telephone: (310) 424-3900
Facsimile: (310) 424-3960

Attorneys for Defendant Opportunity Financial, LLC

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| FREDERICK SIMS, in individual, on behalf of the general public,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OPPORTUNITY FINANCIAL, LLC, a Delaware Company, d/b/a OPPLOANS, FINWISE BANK, a Utah Corporation, and DOES 1-100, inclusive,<br><br>　　　　　Defendant. | Case No. 4:20-cv-04730-PJH<br><br>**DEFENDANTS OPPORTUNITY FINANCIAL, LLC AND FINWISE BANK'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:　　January 6, 2021<br>Time:　　9:00 a.m.<br>Crtrm.:　　3, 3rd Floor<br><br>The Hon. Phyllis J. Hamilton |

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

2

3  I.      INTRODUCTION ............................................................................................1

4  II.     ARGUMENT ...................................................................................................4

5          A.      Federal Law Preempts Plaintiff's State-Law Claims ...........................4

6                  1.      Plaintiff's Claims Are Obstacle Preempted Because the "True
                           Lender" Theory on Which They Are Based Poses an Obstacle to the
7                          Purposes and Objectives of Congress in Enacting Section 27 ......................5

8                  2.      Federal Law Also Expressly Preempts Plaintiff's Claims ............................6

9                          (a)      Plaintiff's "True Lender" Theory Fails Under California and
                                    Federal Law ...................................................................................6
10

11                         (b)      The Loan Agreement Confirms FinWise Is the Lender ..................11

12                         (c)      Utah's Unconscionability Doctrine Is Irrelevant to Section
                                    27 Because It Does Not Set or Interpret a State Interest Rate
13                                  Cap .................................................................................................12

14                         (d)      Section 27 Preempts Plaintiff's Utah Law Claims...........................14

15         B.      Plaintiff's State Law Claims Fail for Additional Reasons .......................................15

16                 1.      Plaintiff's California Law Claims All Fail Because Utah Law
                           Governs in Light of Plaintiff's Election to Invoke the Utah Choice
17                         of Law Clause....................................................................................15

18                 2.      Plaintiff's California Law Claims Fail Because His Loan Is
                           Statutorily Exempt from California's Usury Laws .....................................16

19                 3.      Plaintiff's "Alternative" Utah Law Claims All Fail....................................20

20                 4.      Plaintiff's EFTA Claim Fails ...........................................................26

21         C.      The Motion Disposes of All of Plaintiff's Claims ...............................................26

22  III.    CONCLUSION ................................................................................................29

23

24

25

26

27

28

DEFENDANTS REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) ............................................................................................ 5

*Beechum v. Navient Sols., Inc.*,
 No. EDCV 15-8239-JGB-KKX, 2016 WL 5340454 (C.D. Cal. Sept. 20, 2016) ......... 7, 18, 19

*Bekins Bar V Ranch v. Huth*,
 664 P.2d 455 (Utah 1983) ................................................................................... 24

*Cantamar, L.L.C. v. Champagne*,
 142 P.3d 140 (Utah 2006) ................................................................................... 24

*Citizens' Nat'l Bank of Kansas City, Mo. v. Donnell*,
 195 U.S. 369 (1904) ............................................................................................ 14

*Consumer Fin. Protec. Bureau v. CashCall, Inc.*,
 No. CV15-07522-JFWRAOX, 2018 WL 485963 (C.D. Cal. Jan. 19, 2018) ................... 19, 22

*Crosby v. Nat'l Foreign Trade Council*,
 530 U.S. 363 (2000) ............................................................................................ 5

*Danjanovich v. Robbins*,
 No. 2:04-cv-623 TS, 2005 WL 2457090 (D. Utah Oct. 5, 2005) ........................... 24

*De La Torre v. CashCall, Inc.*,
 5 Cal. 5th 966 (2018) .......................................................................................... 22

*Dillon v. S. Mgmt. Corp. Ret. Tr.*,
 326 P.3d 656 (Utah 2014) ................................................................................... 23

*Droplets, Inc. v. Yahoo! Inc.*,
 No. 12-CV-03733-JST, 2019 WL 9443778 (N.D. Cal. Nov. 19, 2019) ................... 5

*Easter v. American West Financial*,
 381 F.3d 948 (9th Cir. 2004) .............................................................................. 7

*First Nat'l Bank in Mena v. Nowlin*,
 509 F.2d 872 (8th Cir. 1975) .............................................................................. 14

*Greenwood Trust Co. v. Commw. of Mass.*,
 971 F.2d 818 (1st Cir. 1992) .............................................................................. 9

*Harris v. Chase Manhattan Bank,*
    35 Cal. Rptr. 2d 733 (1994) ................................................................................ 27

*Hervochon v. Iona Coll.,*
    No. 14 Civ. 6017 (CS), 2019 WL 2451431 (S.D.N.Y. Feb. 15, 2019) .................................. 25

*Hudson v. Ace Cash Express,*
    Inc., 2002 WL 1205060 (S.D. Ind. May 30, 2002) ........................................................ 10, 11

*Jones v. Wells Fargo Bank,*
    112 Cal. App. 4th 1527 (2003) .............................................................................. 19

*Krispin v. May Dept. Stores,*
    218 F.3d 919 (8th Cir. 2000) ................................................................................ 10

*Linder v. Golden Gate Bridge, Highway & Transp. Dist.,*
    No. 4:14-cv-03861 SC, 2015 WL 4623710 (N.D. Cal. Aug. 3, 2015) ................................... 5

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.,*
    761 F.3d 1027 (9th Cir. 2014) .............................................................................. 27

*Lyons v. NBCUniversal Media, LLC,*
    No. CV 19-3830-MWF, 2019 WL 6703396 (C.D. Cal. Sept. 27, 2019) ......................... 28, 29

*Marquette Nat'l Bank of Minneapolis v. First of Omaha Service Corp.,*
    439 U.S. 299 (1978) ................................................................................... *passim*

*McGill v. Citibank, N.A.,*
    2 Cal. 5th 945 (2017) ...................................................................................... 28

*MediMatch, Inc. v. Lucent Techs. Inc.,*
    120 F. Supp. 2d 842 (N.D. Cal. 2000) .................................................................... 16

*Menzel v. Scholastic, Inc.,*
    Case No. 17-cv-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ....................... 26

*Montgomery v. GCFS, Inc.,*
    237 Cal. App. 4th 724 (2015) .............................................................................. 18

*Nativi v. Deutsche Bank Nat'l Tr. Co.,*
    223 Cal. App. 4th 261 (2014) .............................................................................. 20

*Pac. Gas. & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,*
    461 U.S. 190 (1983) ........................................................................................ 20

*Parks v. MBNA America Bank, N.A.,*
    54 Cal. 4th 376 (2012) ...................................................................................... 5

*Resource Mgt. Co. v. Weston Ranch and Livestock Co., Inc.,*
    706 P.2d 1028 (Utah 1985) ................................................................................. 21

DEFENDANTS REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Roper v. Consurve, Inc.*,
    777 F. Supp. 508 (S.D. Miss. 1990) .................................................................... 13

*Ruiz v. Affinity Logistics Corp.*,
    667 F.3d 1318 (9th Cir. 2012) ........................................................................... 16

*Ryan v. Dan's Food Stores, Inc.*,
    972 P.2d 395 (Utah 1998) ........................................................................... 21, 23

*Santos v. Household Int'l, Inc.*,
    No. C03-1243 MJJ, 2003 WL 25911112 (N.D. Cal. Oct. 24, 2003) ..................................... 27

*Sawyer v. Bill Me Later, Inc.*,
    23 F. Supp. 3d 1359 (D. Utah 2014) ........................................................... 2, 10, 20

*Sawyer v. Bill Me Later, Inc.*,
    No. CV1004461SJOJCGZ, 2010 WL 11492736 (C.D. Cal. Dec. 14, 2010) .................... 13, 21

*Scott v. Lloyd*,
    34 U.S. 418 (1835) .......................................................................................... 9

*Shannon-Vail Five Inc. v. Bunch*,
    270 F.3d 1207 (9th Cir. 2001) ..................................................................... 15, 16

*Sheedy v. BSB Properties, LC*,
    No. 2:13-cv-00290-JNP, 2016 WL 6902513 (D. Utah Mar. 1, 2016) ................................. 24

*Smiley v. Citibank (S.D.), N.A.*,
    517 U.S. 735 (1996) ........................................................................................ 27

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................. 25

*Starks v. Geico Indem. Co.*,
    No. CV-15-5771-MWF (PJW), 2015 WL 12942282 (C.D. Cal. Nov. 10, 2015) .................. 29

*Steel v. City of San Diego*,
    726 F. Supp. 2d 1172 (S.D. Cal. 2010) ............................................................... 25

*Strike v. Trans-W. Disc. Corp.*,
    92 Cal. App. 3d 735 (1979) .............................................................................. 18

*Thornell v. Seattle Serv. Bureau*,
    No. C14-1601-MJP, 2016 WL 3227954 (W.D. Wash. June 13, 2016) ........................... 15, 16

*Ubaldi v. SLM Corp.*,
    852 F. Supp. 2d 1190 (N.D. Cal. 2012) ......................................................... *passim*

*Washington Mut. Bank, FA v. Superior Court*,
    24 Cal. 4th 906 (2001) .................................................................................... 16

*Webster v. Mgmt. Network Grp., Inc. (In re NETtel Corp.)*,
    364 B.R. 433 (Bankr. D.D.C. 2006) ..................................................................... 11

*Wishnev v. The Nw. Mut. Life Ins. Co.*,
    8 Cal. 5th 199 (2019) ......................................................................................... 17

*WRI Opportunity Loans II, LLC v. Cooper*,
    154 Cal. App. 4th 525 (2007) ......................................................................... 6, 19

**Statutes**

12 U.S.C. § 1831d(a) ...................................................................................................... 14

12 U.S.C. §1831d(b) ....................................................................................................... 14

12 U.S.C. § 1867(c) .......................................................................................................... 4

24 U.S.C. Section 86 ...................................................................................................... 14

Cal. Fin. Code § 22002 ................................................................................................... 17

Cal. Fin. Code § 22009 .............................................................................................. 12, 19

Cal. Fin. Code § 22324 ................................................................................................... 20

CFL ........................................................................................................................ *passim*

EFTA ...................................................................................................................... 3, 26

FAL ...................................................................................................................... 26, 27

FDIC Act § 27 ......................................................................................................... *passim*

National Bank Act § 85 ........................................................................................ 8, 9, 13, 14

UCCC ................................................................................................................... 23, 24

UCL ............................................................................................................... 1, 26, 27, 29

Utah Code Ann § 15-1-1 ............................................................................................. *passim*

Utah Code Ann. § 70C-2-101 ..................................................................................... 21, 24

Utah Code Ann. §§ 70C-2-102 .......................................................................................... 24

Utah Code Ann. § 70C-7-106 ..................................................................................... 24, 25

Utah Code § 70C-1-203 ................................................................................................... 25

**Other Authorities**

12 C.F.R. § 7.1031 ......................................................................................... 7, 8

12 C.F.R. § 7.1031(b) ........................................................................................ 8

12 C.F.R. § 7.4001(e) ........................................................................................ 7

12 C.F.R. § 331.4(e) ................................................................................... 7, 8, 9

Black's Law Dictionary .................................................................................... 12

California Constitution Article XV Section 1 .................................................. 17

FDIC, *Conducting Business With Banks: A Guide for Fintechs and Third Parties*
    (Feb. 2020), https://www.fdic.gov/fditech/guide.pdf ................................. 3

FDIC, *Guidance for Managing Third-Party Risk* (June 6, 2008),
    https://www.fdic.gov/news/financial-institution- letters/2008/fil08044.pdf ............................ 4

FDIC, Proposed Examination Guidance for Third-Party Lending, FIL-50-2016 at 2
    (July 29, 2016), https://www.fdic.gov/news/financial-institution-
    letters/2016/fil16050a.pdf .......................................................................... 3

*Interest Rates*, Utah Dep't of Fin. Insts., https://dfi.utah.gov/general-
    information/consumer-tips/interest-rates/ (last visited Dec. 15, 2020) .................. 25

OCC, Final Rule, National Banks and Federal Savings Associations as Lenders, 85
    Fed. Reg. 68,742, 68,744 (Oct. 30, 2020) (to be codified at 12 C.F.R. pt. 7) ............ 8

Stephen L. West, *The Utah Consumer Credit Code: Where Did It Come From, Why
    Is It Here, and Where Is It Going*, 1 BYU J. PUB. L. 1, 3 (1986-1987) ................. 21

## I.    <u>INTRODUCTION</u>

In their Motion to Dismiss (ECF No. 28 ("Mot." or "Motion")) the First Amended Complaint ("FAC"), Defendants Opportunity Financial, LLC ("OppLoans") and FinWise Bank ("FinWise") (together, "Defendants") established that Plaintiff Fredrick Sims' ("Plaintiff") claims fail as a matter of law because federal banking laws preempt them, and because they independently fail on their own merits even if they are not preempted.  Plaintiff's Opposition (ECF No. 29 ("Opp.")) does nothing to salvage his claims.  Indeed, rather than opposing Defendants' legal arguments on the merits, Plaintiff instead pounds the table by attacking Defendants as "moneylenders" and "leech[es]" engaged in "abhorrent[]" conduct that violates "moral guideposts" in existence since "biblical times" and—as if that were not enough—equates them with "drug traders" and "dealers in illegal weapons" for good measure.  (Opp. at 1:1-3:19.)  Contrary to what this inflammatory rhetoric suggests, Defendants are highly regulated financial services providers that strictly comply with the applicable law.  And once one strips away the hyperbole, Plaintiff's Opposition fails to controvert any of the legal arguments in Defendants' Motion.  His claims should be dismissed.

<u>First</u>, federal law preempts all of Plaintiff's California Unfair Competition Law ("UCL") claims premised on California law violations ("California law claims"), each of which is predicated on his baseless allegation that OppLoans is the "true lender" on his loan, notwithstanding the plain language of Plaintiff's loan agreement and his admission that FinWise extended him credit.  As set forth in the Motion, these claims are preempted on two independent grounds: obstacle preemption and express preemption.  With respect to obstacle preemption, Defendants showed that federal law preempts Plaintiff's claims because the true lender theory on which they are based stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting Section 27 of the FDIC Act ("Section 27") by enabling the discrimination against state banks Section 27 was enacted to prevent, and by undermining the regime of legal certainty with respect to permissible interest rates Section 27 established.  (Mot. at 21:20-25:19.)  Plaintiff does not respond to this argument.

Turning to the question of express preemption, Defendants established that Section 27 expressly preempts Plaintiff's state-law claims because it permits state-chartered banks such as

1    FinWise to lend up to the rate allowed by the laws of their home state (here, Utah) and preempts

2    contrary laws in other states, without regard to whether there was a sale or assignment of the loan

3    after origination.  This interpretation was confirmed by recent, formal rulemaking by the Federal

4    Deposit Insurance Corporation ("FDIC") establishing that the preemptive force of Section 27

5    applies throughout the life of the loan, including after sale or assignment to a nonbank.  (*See* Mot.

6    at 9:20-11:3 (citing 12 C.F.R. § 331.4(e) (the "Interest Rate Authority Rule")).)  Plaintiff does not

7    contest that this rulemaking is entitled to deference.  His only rejoinder is that his conclusory "true

8    lender" allegations enable him to escape preemption.  Not so.  The out-of-date cases on which

9    Plaintiff relies to oppose preemption are no longer good law in light of more recent cases and

10   regulatory developments which Plaintiff fails to address.  Nor can Plaintiff escape preemption by

11   arguing—without support—that this loan was invalid at origination because his interest rate is

12   unconscionable under Utah law.  His Utah unconscionability claim fails on the merits, and it is

13   wholly irrelevant to preemption under Section 27 in any event.

14        Further, Plaintiff's argument that Defendants are engaged in "evasion" or "subterfuge" of

15   California's law by availing themselves of the protection of Section 27 is entitled to no weight.  As

16   the Supreme Court has explained, arguments that interest rate exportation leads to evasion of state

17   usury laws are not *legal* arguments against preemption; rather, they are *policy* arguments "better

18   addressed to the wisdom of Congress" than courts.  *Marquette Nat'l Bank of Minneapolis v. First

19   of Omaha Service Corp.*, 439 U.S. 299, 319 (1978); *see also  Sawyer v. Bill Me Later, Inc.*, 23 F.

20   Supp. 3d 1359, 1367 (D. Utah 2014) ("concerns about protection of state usury laws present

21   questions of legislative policy better addressed by Congress.").  Such policy arguments cannot state

22   a claim in the face of federal statutes embodying a clear and contrary policy choice.

23        <u>Second</u>, even if federal law does not preempt Plaintiff's California law claims, they still fail

24   as a matter of law.  As a preliminary matter, Plaintiff's knowing election to invoke the Utah choice

25   of law clause in his loan agreement forfeits his California law claims.  Further, even if California

26   law applies, his claim that OppLoans violated the California Financing Law ("CFL") and his

27   derivative claims fail because his loan is statutorily exempt from the CFL.  Notably, in their Motion,

28   Defendants cited numerous California cases rejecting Plaintiff's "true lender" theory of liability and

1   establishing that "California courts look *only* to the *face* of the transaction at issue to determine

2   whether an exemption to [California's] usury prohibition applies."   (Mot. at 30:25-33:9 (citing

3   *Beechum v. Navient Sols., Inc.*, No. EDCV 15-8239-JGB-KKX, 2016 WL 5340454, at *7 (C.D. Cal.

4   Sept. 20, 2016); *WRI Opportunity Loans II, LLC v. Cooper*, 154 Cal. App. 4th 525, 535-36 (2007)

5   ("WRI*")*; *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1537-39 (2003).).   Remarkably,

6   Plaintiff's Opposition **does not respond to or address any of these cases**.

7         Third, Plaintiff's Utah law unconscionability claims also fail as a matter of law.   Section

8   27's private right of action preempts them.   Further, the claims fail because Plaintiff fails to allege

9   any substantive unconscionability other than the amount of the interest rate, which is insufficient as

10  a matter of law in light of Utah's decision to abolish its interest rate cap and adopt a law permitting

11  parties to agree to "any" interest rate.   Utah Code Ann § 15-1-1.

12        Fourth, Plaintiff's stray claim for violation of the Electronic Fund Transfer Act ("EFTA")

13  fails because Plaintiff tacitly admits *his* loan was not actually conditioned on repayment through

14  electronic funds transfers, and his loan agreement's disclosures defeat his claim.

15        Finally, not only does Plaintiff fail to show any of his claims are actionable, his assertion

16  that Defendants claim to be "untouchable" and request that the Court "remake" the world so that

17  they are "free[] from liability, accountability, or meaningful regulation" (Opp. at 1:4-3:19) is simply

18  false.   Defendants are subject to a wide array of complex and demanding regulatory regimes

19  governing state-chartered banks, third-party service providers, and loan servicers, and can be sued

20  under any number of statutory and common law theories when they fail to comply with their legal

21  duties.   Indeed, while the FDIC has expressly recognized and encouraged the bank partnership

22  model about which Plaintiff complains,[1] it also has made clear that a bank's management of these

23  ─────────────

24        [1] *See* FDIC, Proposed Examination Guidance for Third-Party Lending, FIL-50-2016 at 2
    (July   29,   2016),   https://www.fdic.gov/news/financial-institution-letters/2016/fil16050a.pdf
25  (recognizing that in some third-party lending arrangements, the bank "holds the loan for only a short
    period of time before selling it to the third party," which performs "a significant aspect of the lending
26  process, such as . . . marketing; borrower solicitation; credit underwriting; loan pricing; loan
    origination; retail installment sales contract issuance; customer service; consumer disclosures;
27  regulatory compliance; loan servicing; debt collection; and data collection, aggregation, or
    reporting") (last accessed Dec. 16, 2020); FDIC, *Conducting Business With Banks: A Guide for*

28

relationships is subject to FDIC supervision and enforcement.  FDIC, *Guidance for Managing Third-Party Risk,* FIL-44-2008 (June 6, 2008), https://www.fdic.gov/news/financial-institution-letters/2008/fil08044.pdf (providing that a bank's management is "ultimately responsible for managing activities conducted through third-party relationships"); 12 U.S.C. § 1867(c) (providing for FDIC supervision of state banks, including evaluation of all services performed by third parties on the banks' behalf, which are "subject to regulation and examination by [the FDIC] to the same extent as if such services were being performed by the depository institution[s] [themselves].").

Thus, far from seeking to evade regulation and accountability, the structure of OppLoans and FinWise's relationship subjects their loan program to extensive supervision, enforcement, and litigation risk.  And while Plaintiff alleges that Defendants are engaged in a nefarious "conspiracy…[to] charg[e] consumers…high interest rates and ignor[e] state laws limiting them" (FAC ¶ 21), the facts alleged in the FAC only establish a business relationship that complies with the law.  For these reasons and those set forth below, Plaintiff's claims should be dismissed.

## II.   **ARGUMENT**

### A.   **Federal Law Preempts Plaintiff's State-Law Claims**

Plaintiff alleges that contrary to his loan agreement's plain language and his admission that FinWise extended him credit, OppLoans is the *true* "finance lender" on his loan, and therefore the interest rate he agreed to pay is illegal and unconscionable under California and Utah law.  (FAC ¶¶ 1, 6-8, 21-24.)  However, as explained in the Motion, federal law preempts all of Plaintiff's state-law claims in three ways.  <u>First</u>, Plaintiff's California law claims are obstacle preempted because the "true lender" theory on which Plaintiff's claims are based is an obstacle to the accomplishment of Congress's purposes and objectives in enacting Section 27.  (Mot. at 21:20-25:19.).  <u>Second</u>, Section 27 expressly preempts Plaintiff's California law claims because it permits FinWise to lend up to the interest rate allowed by the laws of Utah, which it did, and expressly preempts any claims premised on the violation of usury laws in other states.  (*Id.* at 11:4-21:19.)  And <u>third</u>, Plaintiff's

---

*Fintechs and Third Parties* (Feb. 2020), https://www.fdic.gov/fditech/guide.pdf (guide specifically for third-party service providers to "encourage innovation that meets consumer demand") (last accessed Dec. 16, 2020).

1    Utah claims are preempted by the exclusive private right of action in Section 27.  (*Id.* at 25:20-

2    26:17.)  The Opposition either ignores or fails to controvert these arguments.  Plaintiff's claims are

3    all preempted, and the FAC should be dismissed.

4              **1.    Plaintiff's Claims Are Obstacle Preempted Because the "True Lender"**
                    **Theory on Which They Are Based Poses an Obstacle to the Purposes**
5                   **and Objectives of Congress in Enacting Section 27**

6              In the Motion, Defendants demonstrated that Plaintiff's "claims…fail because they are

7    premised on" a subjective, multi-factor test to determine the "true lender" on a given loan "that

8    poses a direct obstacle to Congress's purposes and objectives in enacting Section 27."  (Mot. at

9    21:20-25:19.)  As Defendants explained, the "true lender" test impermissibly "interferes with the

10   regime of regulatory certainty" Section 27 established and "enables precisely the type of state-law

11   discrimination against out-of-state, state-chartered banks Congress sought to eliminate" by requiring

12   a "nebulous, multi-factor analysis that varies from state to state and court."  (Mot. at 21:20-25:19

13   (citing *Parks v. MBNA America Bank, N.A.*, 54 Cal. 4th 376 (2012) and *AT&T Mobility LLC v.*

14   *Concepcion*, 563 U.S. 333 (2011)).)

15             Plaintiff did not respond to this argument at all.  The Opposition does not once address

16   obstacle preemption and does not even mention *Parks* or *Concepcion*.  Plaintiff's "failure to respond

17   to this argument constitutes a concession" requiring dismissal of the FAC.  *Droplets, Inc. v. Yahoo!*

18   *Inc.*, No. 12-CV-03733-JST, 2019 WL 9443778, at *5 (N.D. Cal. Nov. 19, 2019); *Linder v. Golden*

19   *Gate Bridge, Highway & Transp. Dist.*, No. 4:14-cv-03861 SC, 2015 WL 4623710, at *4 (N.D. Cal.

20   Aug. 3, 2015) (dismissing the plaintiff's claim because his opposition brief did not address the

21   defendants' argument in their opening brief).

22             To the extent Plaintiff addressed this argument even indirectly, it is his argument that

23   Defendants' approach would not create "certainty" but instead would create "unfair surprise" for

24   "borrowers like Mr. Sims."  (Opp. at 15.)  This is a non-sequitur.  In evaluating obstacle preemption,

25   courts "examin[e] the federal statute…and identify[] its purpose and intended effects" to determine

26   whether its purpose and operation are frustrated by a state law or doctrine.  *Crosby v. Nat'l Foreign*

27   *Trade Council*, 530 U.S. 363, 373 (2000) (internal marks omitted).  The record demonstrates that

28   Congress's purpose in enacting Section 27 was to end discrimination against state-chartered banks

and provide them with the same uniform and certain lending rules governing national banks.  (*See* Mot. at 8:7-9:19, 22:12-24:9 (citing *Greenwood Trust Co. v. Commw. of Mass.*, 971 F.2d 818, 827 (1st Cir. 1992); *Sawyer*, 23 F. Supp. 3d at 1363; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10-11 (2003)).)  Thus, any obstacle preemption analysis must be measured against this purpose, not a new policy interest of Plaintiff's choosing.

In sum, Plaintiff's California claims are obstacle preempted for the reasons set forth in the Motion, which is confirmed by his wholesale failure to address the argument.

### 2.    Federal Law Also Expressly Preempts Plaintiff's Claims

Section 27 also expressly preempts Plaintiff's state-law claims.  Plaintiff does not dispute that state banks and their assignees are entitled to charge interest at a rate permitted in the bank's home state without regard to contrary state laws.  (Mot. at 6:7-13:27.)  Instead, Plaintiff asks this Court to ignore the loan documents and his pled allegations that FinWise (a state bank) made his loan, and instead find that OppLoans is the "true lender" and thus not entitled to Section 27 preemption. (Opp. at 16:1-4 (conceding "Defendants'…preemption arguments succeed if…FinWise is the…lender").)  But rhetoric and unpled allegations do not convert a lawful partnership into a nefarious scheme, and conclusory allegations that OppLoans is the "true lender" are insufficient to avoid preemption.  Plaintiff's alternative argument—that preemption does not apply because the charged interest rate is not allowed under Utah on unconscionability grounds—cannot be squared with Section 27.

### (a)    Plaintiff's "True Lender" Theory Fails Under California and Federal Law

Federal and California law foreclose Plaintiff's argument (Opp. at 9:9-10:14) that the Court should disregard his loan agreement and conduct a "thorough analysis" to identify the "true lender" by ascertaining which party "puts money at risk."  (Mot. at 15:18-18:10; 30:27-33:9 (describing contrary federal and California approach)); *see also WRI Opportunity Loans II, LLC*, 154 Cal. App. 4th at 535-36 ("[W]hen a loan meets the requirements for a statutory exemption to the usury law [e.g., a state-chartered bank], courts will not look beyond those requirements to determine whether the underlying transaction exposes the lender's profits to significant risk or betrays an intent to evade

1    usury law.").

2          Contrary to what Plaintiff asserts, neither *Easter v. American West Financial*, 381 F.3d 948

3    (9th Cir. 2004) nor *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012) hold otherwise.

4    As Plaintiff admits, *Easter* applied **<u>Washington</u>** state law.  (Opp. at 9:13-15.)  It provides no insight

5    into **<u>California</u>** law and is irrelevant.[2]  Similarly, *Ubaldi* did not consider the uniform California

6    authority providing that courts should not look beyond the face of the loan documents when

7    considering the applicability of a statutory exception to California's usury laws.  (Mot. at 31:5-10

8    (collecting authority).)

9          Critically, the Central District of California evaluated the very same underlying relationship

10   involving Stillwater Bank nearly five years later in *Beechum*, 2016 WL 5340454, but actually

11   considered California law on the issue.  In that case, similar to here, the plaintiff asserted that the

12   nonbank was the "true lender" because it allegedly "controlled all aspects of marketing [the] loans"

13   and bore the risk of loss in the event of default.  *Id.* at *2.  The court rejected that argument and

14   correctly held the lender named on the loan agreement—Stillwater Bank—was the lender under

15   California appellate cases "hold[ing] that the Court must look only to the face of a transaction when

16   assessing whether it falls under a statutory exemption from the usury prohibition and not look to the

17   intent of the parties."  *Id.* at *7 (collecting cases).[3]  Thus, while Plaintiff seeks to have California

18   law govern the determination of who the lender is for purposes of Section 27 preemption of state

19   usury laws, the "clear precedent" (*id.*) in California dictates the lender is FinWise.

20         To the extent *Ubaldi* could be read to have any persuasive value after *Beechum*, it is

21   nonetheless properly disregarded in light of the Interest Rate Authority Rule and the OCC's valid

22   when made and true lender rules, which are respectively codified at 12 C.F.R. § 7.4001(e) and 12

23   C.F.R. § 7.1031.  Plaintiff portrays *Ubaldi* as fully embracing the "predominate-economic interest

---

25         [2] Even if *Easter* applied, it would still dictate that Finwise is the lender.  In *Easter*, the Ninth
26   Circuit recognized that a broker would be considered the lender if it used its own money even for a
     matter of days.  381 F.3d at 959-60.  Here, while Plaintiff attempts to recast those allegations in the
27   Opposition, he admits in the FAC that FinWise originates the loans before assigning them to
     OppLoans (FAC ¶¶ 20-21), and there is no allegation that FinWise does not fund the loans.

28         [3] In reaching this conclusion, the court properly distinguished *Ubaldi* as "irrelevant" given
     that it did not consider the precedential California authority.  *Id.* at *20-21, n.8.

1    test" and dictating that merely alleging a non-bank is the true lender is sufficient to avoid

2    preemption. (Opp. at 12:14-13:27.) But what the *Ubaldi* court actually held was that "neither party

3    offer[ed] persuasive authority as to whether Section 85 of the NBA expressly preempts state law

4    claims against a loan servicer that is alleged to have actually 'made' the loan[,]" so it permitted the

5    plaintiff to explore her theory in discovery. *Ubaldi*, 852 F. Supp. 2d at 1203. The new regulatory

6    developments, finalized this year, are exactly that "persuasive authority" that "squarely addresses"

7    the question of preemption. In particular, as Plaintiff admits, the *Ubaldi* court permitted the

8    plaintiff's claim to proceed primarily based on the allegation that Stillwater did not retain an interest

9    in the loan after transfer. (*See* Opp. at 13:22-27.) But—as explained in the Motion to Dismiss—

10   the Interest Rate Authority Rule dictates that an immediate transfer does not undermine the

11   preemptive force of Section 27. (Mot. at 18:13-19:14.) Thus the "predominant economic interest"

12   approach to identifying the "true lender" used in *Ubaldi*—which focuses on which party bears the

13   risk of loss on the loan—cannot be reconciled with the Interest Rate Authority Rule. (*Id.*) Whenever

14   a loan is transferred, the transferee will bear the risk of loss; if that was sufficient to turn every

15   transferee into the lender, it would wholly negate the Interest Rate Authority Rule. (*Id.*) Thus, the

16   theory the *Ubaldi* court allowed to survive the pleadings has been abrogated by subsequent

17   regulatory developments. Plaintiff wholly ignores this argument in Opposition and thereby

18   concedes he has no response.

19       The now-final OCC true lender rule[4] likewise dictates that *Ubaldi* would be decided

20   differently today. (Mot. at 17:4-18:10.) That rule rejects the "predominant economic interest"

21   approach to identifying the lender and instead opts for a bright-line rule approach clarifying that for

22   purposes of Section 85 preemption, "a bank makes a loan when the bank, as of the date of

23   origination: (1) Is named as the lender in the loan agreement; or (2) Funds the loan." 12 C.F.R. §

24   7.1031(b)(1)-(2); *see also* OCC, Final Rule, National Banks and Federal Savings Associations as

25   Lenders, 85 Fed. Reg. 68,742, 68,744 (Oct. 30, 2020) (to be codified at 12 C.F.R. pt. 7) (explaining

26   "the OCC's views are informed by courts' divergent true lender tests and the resulting lack of

27

28       [4] The True Lender Rule is effective on December 29, 2020. 12 C.F.R. § 7.1031.

1    predictability faced by stakeholders").  Thus, while the propriety of "consider[ing] what entity is

2    the actual 'de facto lender' for purposes of Section 85 preemption may have been "a question of

3    first impression" when *Ubaldi* was decided as to which "neither party offer[ed] persuasive

4    authority," the true lender rule is that authority and would have definitively resolved the question.

5         Plaintiff summarily argues that the OCC rules and FDIC rules are not entitled to deference,

6    but fails to put forth any reasons they should not be followed.  (Opp. at 14:3-15:11.)  As an initial

7    matter, Plaintiff's argument that the OCC true lender and valid when made rules are not entitled to

8    *Chevron* deference is a straw man argument.  Defendants never contended that the Court should

9    defer to the OCC's rules, which pertain to national banks.  Defendants argue that the OCC rules and

10   the OCC's rationale for implementing them are persuasive authority.  (Mot. at 17:4-18:6.)

11        Further, Plaintiff does not actually contest that the Interest Rate Authority Rule is entitled to

12   deference under *Chevron* (*compare* Mot. at 12:19-13:27 *with* Opp. at 14:3-15:11), he only argues

13   that the FDIC's not-yet-in-existence-True-Lender-Rule is not so entitled.  (Opp. at 14:21-15:11.)

14   But that is not Defendants' argument either.  Defendants' point is the OCC—with its regulatory

15   expertise—has recognized that the federal-test line cases that reject the "true lender" framework

16   take the better approach, which supports the Court reaching the same conclusion.  (Mot. at 17:4-

17   18:6.)  Further, Plaintiff does not contest that Section 27 was enacted to "level the playing field

18   between federally chartered and state-chartered banks." *Greenwood Trust Co.*, 971 F.2d at 826-27;

19   (Mot. at 8:8-9:19.).  As such, adopting an unpredictable multifactor test for state banks when courts

20   evaluating the propriety of interest rates charge by national banks look only to the face of the loan

21   documents would directly undermine the intent behind Section 27 and restore the competitive

22   imbalance Section 27 was enacted to rectify.

23        Plaintiff's remaining arguments against following the well-reasoned approach of the OCC—

24   that "usury is a mortal taint" and the true lender rule "promotes unfair surprise" (Opp. at 15:7-27)—

25   are easily dismissed.  The usury cases Plaintiff cites pertain to transactions that are structured with

26   additional fees on top of interest or as a non-loan to evade interest caps.  *See, e.g.*, *Scott v. Lloyd*, 34

27   U.S. 418, 429-30 (1835) (allegation that usurious loan was disguised "under the form and name of

28   an annuity, or rent charge").  They do not in any way undermine that loans issued by state banks, in

1   accordance with the laws of their home state, are not usurious and that the subsequent transfer of

2   those loan cannot make them usurious.  (Mot. at 9:22-11:3.)  Nor does Plaintiff identify any actual

3   surprise.  Plaintiff admits the interest rates are plainly disclosed on the OppLoans' website, and the

4   website and the loan documents identify FinWise as the lender.  (FAC ¶¶ 19, 73-75.)

5        *Ubaldi* also does not undermine *Krispin v. May Dept. Stores*, 218 F.3d 919 (8th Cir. 2000),

6   *Hudson v. Ace Cash Express*, Inc., 2002 WL 1205060 (S.D. Ind. May 30, 2002), or *Sawyer*, 23 F.

7   Supp. 3d 1359, and Plaintiff cannot rely on unpled allegations to distinguish those cases either.  As

8   an initial matter, Plaintiff wholly ignores *Sawyer*, which considered and declined to follow *Ubaldi*.

9   In so declining, the court noted that the magistrate judge in *Ubaldi* "allowed the case to proceed

10  [based on] pre-*Twombly* Ninth Circuit caselaw[,]" it "did not hold that the bank was not the lender,

11  or that the federal usury laws did not apply to the bank[,]" and there was an allegation there that the

12  Bank did not actually fund the loan.  *Id.* at 1369-70.  There is no such allegation here.  Further,

13  Plaintiff (and the *Ubaldi* court) fixate on the fact that the Eighth Circuit in *Krispin* found that the

14  bank was "the real party in interest" to contend that the Court should look beyond the face of the

15  loan documents.  (Opp. at 13:8-9.)  But in determining the "real party in interest," the Eighth Circuit

16  looked to the obligations set forth in the contract—not who had a primary economic interest—thus

17  it cannot support looking beyond the contract here.  *Krispin*, 218 F.3d at 923-24 (8th Cir. 2000).

18  Indeed, in *Krispin* it was undisputed that the store purchased **all** the credit card receivables from the

19  bank at the end of each day and the Court still found that the bank was the real party in interest.  *Id.*

20       As to *Hudson*, Plaintiff effectively concedes that if a bank retains *any* interest in the loan,

21  then his claims are preempted, but now claims he alleged that FinWise never had a financial interest

22  in the loan.  (Opp. at 12:17-13:6.)  Yet that is not actually what Plaintiff alleged—in fact, he alleged

23  in multiple places that FinWise originated the loan (*see, e.g.*, FAC ¶¶ 21-24), which the loan

24  agreement confirms.  And, he makes no allegations as to the extent of FinWise's ongoing interest

25  in the FAC.  Instead, Plaintiff merely describes *other* lending relationships and assumes Defendants

26  have something similar without alleging any specific facts about whether his loan was sold, who

27  holds the note now, or whether (and to what extent) FinWise retains an ongoing interest.  (*See* FAC

28  ¶¶ 92-94.)  Plaintiff cannot cure his complaint with unpled allegations or allegations that are

1    defeated by the underlying documents.   He also faults Defendants for not submitting their

2    participation agreement to rebut his allegations.  (Opp. at 12:23-24.)  Defendants, however, did not

3    submit their participation agreement because it is irrelevant: the loan documents show, and Plaintiff

4    admits, that FinWise extended him credit.  Thus, FinWise is the lender under federal or California

5    law.  Plaintiff also overstates the extent to which *Ubaldi* distinguished *Hudson*.  *Ubaldi* recognized

6    *Hudson*'s analysis as having "persuasive force," 852 F. Supp. 2d at 1202, but "decline[d] to dismiss

7    at this early stage" given the uncertain state of the law at that time and unique factual allegations in

8    the complaint, including the allegation that the nonbank actually founded the loan and the dispute

9    over "whether or to what extent Stillwater retained any significant stake in or control over Plaintiff's

10   loan."  *Id.*  Plaintiff's FAC does not include such allegations and as noted above, the uncertainty

11   about application of "true lender" analysis to preemption has been resolved against it.[5]

12                          **(b)      The Loan Agreement Confirms FinWise Is the Lender**

13           In Opposition, Plaintiff ignores the promissory note entirely and instead points to an address

14   box for the lender that identifies "FinWise Bank C/O Opportunity Finance" to argue that the

15   agreement itself demonstrates OppLoans is the lender.  This argument should be given short

16   shrift.  The term "C/O" is a postal term.  It means "in care of," and is "used especially…on mail sent

17   through another person."  *Webster v. Mgmt. Network Grp., Inc. (In re NETtel Corp.)*, 364 B.R. 433,

18   461 (Bankr. D.D.C. 2006) (internal marks omitted).  The C/O symbol appears on the face of

19   agreement because as the servicer of the loans, OppLoans sends and receives mail in care of

20   FinWise, and including the symbol ensures mail is not incorrectly returned to sender.  The actual

21   agreement of the parties—the promissory note—is crystal clear that the lender is FinWise, that

22   FinWise is extending credit, and that Plaintiff's payment obligation is to FinWise.  (Compl., Ex. A

23   ("In this Promissory Note and Disclosure Statement ('Note')…[t]he words 'lender' 'we' and 'us'

24   means **FinWise Bank, an FDIC-insured bank located in Utah,** or any of its direct or indirect

25

26           [5] As noted in the Motion, Plaintiff's description of the FinWise-OppLoans relationship is
     factually incorrect, but Defendants assumed it was true for purposes of the Motion.  (Mot. at 4:27-
27   28, n.2.)  In truth, FinWise remains the owner of Plaintiff's loan and has an ongoing financial stake
     in its performance.
28

assignees.") (emphasis added).)[6]   His wholly unsupported contention that including "direct" or "indirect assignees" in the definition of "lender" somehow conveys that *OppLoans* in particular is the actual lender (Opp. at 17:1-2) cannot be inferred from the plain language, which merely gives FinWise a future assignment right.   Nor can it be squared with the fact that his loan agreement identifies OppLoans as the servicer.   (Mot. at 4:5-9).   Plaintiff's contention that a borrower will not understand the common postal term "C/O" is wholly speculative and strange given that it is a common mailing term, and it is also inconsistent with his theory that a borrower will somehow read "assignee" and conclude that must mean OppLoans is the actual lender.

Further, Plaintiff's own allegations of an immediate sale concedes that FinWise extended the credit.   (FAC ¶¶ 22, 24.)   The fact that Plaintiff admits FinWise funded the loan likewise distinguishes the FAC from the complaints in *Ubaldi* and *Eul*, which alleged that the non-bank provided the money to fund the loan.   Recognizing this problem, Plaintiff now asserts *in Opposition* that FinWise never had an economic interest in the loan and OppLoans "exercises all control" over the lending process.   (Opp. at 18:16-27.)   But Plaintiff cannot cure his complaint with unpled allegations; nor could he plead those allegations in a further amended pleading because they are not true.   Further, Plaintiff's argument that OppLoans conducts all lending activities is baseless.   All the activities identified on the loan documents (receiving and processing payments) and in Opposition are typical servicing or marketing activities.   (*See* Opp. at 18:9-12.)   In contrast, Plaintiff concedes FinWise extended the credit, which is one of only two activities identified as being evidence of one being in the business of lending under California law, or TILA, or even Black's Law Dictionary. ((Mot. at 15:18-19; 17:22-18:6) (citing TILA and Black's Law Dictionary)); Cal. Fin. Code § 22009 (identifying extending credit and taking security as lending activities).   As such, Plaintiff's argument that the Loan Documents demonstrate that OppLoans is the "true lender," cannot be squared with the documents themselves (or even Plaintiff's own allegations) and are properly disregarded.

> **(c)   Utah's Unconscionability Doctrine Is Irrelevant to Section 27 Because It Does Not Set or Interpret a State Interest Rate Cap**

Plaintiff's claim that Defendants treat Utah as a lawless haven is baseless.   As set forth in

---

[6] Plaintiff's loan agreement is attached to the original Complaint (ECF No. 1-1, Ex. A).

the opening brief, Utah is one of several states that elected to remove an interest rate cap to promote freedom of contract and allow parties to agree to "any" rate.  (Mot. at 20:11-21:19); *see also Sawyer v. Bill Me Later, Inc.*, No. CV1004461SJOJCGZ, 2010 WL 11492736, at *4-6 (C.D. Cal. Dec. 14, 2010) (recognizing that Utah Code Ann. Section 15-1-1 reflects Utah's public policy 'interest in respecting contractual freedom.")  Despite this plain authorization to contract at "any" rate, the crux of his unconscionability argument is that "any" does not include his interest rate that he contracted for because it is too high.  (*See* FAC ¶¶ 217-219.)  But as set forth in the Motion and below, permitting such a claim to proceed cannot be squared with the plain meaning of the word "any" and would contravene the intent of the Utah legislature when it removed Utah's rate cap.  (*See infra* at 20-22.)  It is Plaintiff—not Defendants—that asks the Court to ignore Utah law.

Plaintiff's claim that Defendants misquote or misrepresent Section 27 by "omitting" the "s" on "laws" is meritless.  The Motion repeatedly quotes Section 27 in full (*see, e.g.*, Mot. at 19:25-26) and Defendants do not in any way contest that multiple state laws, including cases interpreting those laws, may affect the amount of interest a state bank can charge under Section 27 (*Id.* at 19:17-21:19.).  To the contrary, the argument is clear:  Section 27 turns only on the laws of the state that set the interest rate allowed.  (*Id.*)  Utah's statutory and common law unconscionability doctrine is not such a law.  (*Id.* at 19:26-20:10.)  Therefore, it is irrelevant to interest rate exportation.  (*Id.*)

Plaintiff does not identify a single case that has ever used the doctrine of unconscionability in a bank's home state to prevent exportation of a rate allowed by the actual laws of that state setting permissible interest rates.  Unable to find such a case, Plaintiff instead points to a series of cases that hold "the laws of the state" governing the "rate allowed" under Section 85 of the National Bank Act include not only the usury law setting a specific rate cap, "but also the entire case law of the state interpreting the state's limitations on usury."  (Opp. at 26:11-20 (collecting cases).)  But Defendants never argued otherwise, and these cases only highlight the weakness of Plaintiff's argument against interest rate exportation.  In each cited case, the court ruled that the relevant "laws of the State" for interest rate exportation purposes include laws specifically limiting the rate of interest a lender may charge and cases interpreting those laws.  *Roper v. Consurve, Inc.,* 777 F. Supp. 508, 513-16 (S.D. Miss. 1990) (holding state usury law includes statutes and cases providing

that the repeal of Mississippi's interest rate cap applies retroactively); *First Nat'l Bank in Mena v. Nowlin*, 509 F.2d 872, 876-880 (8th Cir. 1975) (holding state usury law includes Arkansas case law setting forth how an interest rate should be calculated for purposes of determining whether it violates the state's cap); *Citizens' Nat'l Bank of Kansas City, Mo. v. Donnell*, 195 U.S. 369, 374 (1904) (holding state usury law includes limits on the amount a lender can compound interest yearly). These cases are plainly irrelevant here because Plaintiff does not bring his claims under such a law or case. Rather, he brings them under Utah's unconscionability doctrine, which does not set or interpret a specific interest rate limit, is not state usury law under Section 27, and thus cannot preclude interest rate exportation. (Mot. at 19:26-20:10.)

### (d)    Section 27 Preempts Plaintiff's Utah Law Claims

In the Motion Defendants demonstrated that Section 27 is interpreted *in pari materia* with 24 U.S.C. Section 86, and therefore its private right of action at 12 U.S.C. §1831d(b) is the exclusive remedy for a borrower alleging a state bank "charged a greater amount of interest than is allowed by [12 U.S.C. § 1831d(a)]." (Mot. at 25:21-26:17.) Plaintiff does not contest that each of his Utah law claims purport to "challenge[] the 'rate of interest'…charged by FinWise, a state-chartered bank." (*See* Opp. at 25:4-36:15.) Accordingly, Section 27's private right of action is the exclusive remedy for such a claim, and his state law claims are preempted. Plaintiff's only response to the Section 27 preemption argument is to summarily assert that his Utah unconscionability claims cannot both be preempted and not a "law of the state" for usury determinations. (Opp. at 27:3-11.) This argument, asserted without authority or any reasoning as to why these two concepts are at odds with one another, is an attempt to create a conflict where none exists.[7] It is entirely uncontroverted that there is (1) no authority to use the doctrine of unconscionability to prevent interest exportation,[8] and (2) unconscionability claims predicated on challenges to the interest rate charged by state banks

---

[7] Plaintiff's Utah claims also fail on the merits (*see infra* at 20-25) so no leave should be given to assert a claim under Section 27. But the existence of a remedy for actual actionable claim further demonstrates the "conflict" Plaintiff alleges is not a real one.

[8] The lack of authority is no surprise. As explained in the Motion, given the holistic nature of the unconscionability analysis, which takes into account numerous factors wholly unrelated to price, allowing parties to use this doctrine to negate the preemptive force of Sections 85 and 27 "would upend the entire concept of interest rate exportation." (Mot. at 20:8-10; 20:24-21:19.)

DEFENDANTS REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    are preempted.  (*Infra* at 27-28.)  Plaintiff's Utah claims are thus preempted.

2         **B.     Plaintiff's State Law Claims Fail for Additional Reasons**

3              **1.     Plaintiff's California Law Claims All Fail Because Utah Law Governs in
                   Light of Plaintiff's Election to Invoke the Utah Choice of Law Clause**

4         Plaintiff's argument that California law applies to this case (Opp. at 36:16—38:11) ignores

5    Ninth Circuit authority and his own voluntary decision to invoke a Utah choice-of-law clause.

6    Plaintiff does not dispute that his loan agreement has a choice of law clause providing that Utah law

7    governs or that he chose to bring Utah law claims in an amended complaint upon seeing Defendants'

8    challenges to his original complaint alleging only California law violations.   Instead, he argues

9    California law should govern under Restatement principles and in light of California's public policy

10   against "usurious interest rates" and "false and deceptive marketing practices."  (*Id.*)

11        These arguments simply rehash points rejected by the Ninth Circuit in *Shannon-Vail Five*

12   *Inc. v. Bunch*, 270 F.3d 1207 (9th Cir. 2001).  In *Shannon-Vail Five*, the Ninth Circuit affirmed a

13   district court's order dismissing the plaintiff's California usury claims on the grounds that Nevada

14   law applied to the loan under Restatement choice of law principles.  *Id.* at 1210-1214.  On appeal,

15   the plaintiff argued that California law ought to apply under the Restatement "because California

16   has a usury statute and Nevada has none," *id.* at 1213, such that applying Nevada law would deprive

17   Plaintiff of a remedy.  The Ninth Circuit rejected that argument, explaining that "the lack of a usury

18   law does not mean that Nevada has a less substantial concern than California about interest rates;

19   rather, it appears to reflect a choice to favor individual contract decisions and the free flow of

20   capital."  *Id.*  It then concluded that because the contract required repayment of the loan in Nevada,

21   Nevada law applied under the Restatement and the plaintiff's claims properly were dismissed.  *Id.*

22        Here, as in *Shannon-Vail Five*, Plaintiff seeks to avoid the application of Utah law because

23   of California public policy but ignores that Utah law also reflects a policy "choice to favor individual

24   contract decisions and the free flow of capital."  *Id.*; *see also Thornell v. Seattle Serv. Bureau*, No.

25   C14-1601-MJP,  2016 WL 3227954, at *4 (W.D. Wash. June 13, 2016) ("a state does not have a

26   more significant or less significant relationship because of the amount of relief its statutes provide

27   to plaintiffs").  Given that the loan agreement requires repayment to a bank located in Utah,

28

                                                                   15                      Case No. 4:20-cv-04730-PJH

*Shannon-Vail Five* governs, Utah law applies, and Plaintiff's California law claims should be dismissed. (*See* Compl. Ex. A ¶ 3 ("You promise to pay us the principal sum of $1,500 plus interest until the loan is fully paid"); *id.* at 1 (defining "us" to be "FinWise Bank, an FDIC-insured bank located in Utah….").)

Plaintiff's knowing election to bring Utah law claims supports this conclusion. Apparently realizing the consequences of that choice, Plaintiff claims he "pleads his Utah claims against FinWise and in the alternative only." (Opp. at 6:18-19.) But it is too late for this revisionist history. The FAC (and not his Opposition) is what governs, and it says nothing about these being "alternative" claims and does not limit them to FinWise. In this regard, the cases Plaintiff cites to evade the choice of law clause— *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) and *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 918 (2001)—are plainly distinguishable because they do not involve a plaintiff who chose to bring claims pursuant to the choice of law clause or address *Shannon-Vail Five*. On the other hand, Plaintiff's distinction of *MediMatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 861 (N.D. Cal. 2000) on the grounds that it involved commercial entities makes no difference. As Plaintiff acknowledges, Defendants cited that case as evidence that courts enforce choice of law clauses against parties that invoke them. By the time Plaintiff filed the FAC and chose to add Utah claims, he was represented by sophisticated counsel well aware of the impact of their choices. By making the choice he did, Plaintiff ratified the choice of law clause and waived his right to pursue the California law claims. They all should be dismissed.

### 2. Plaintiff's California Law Claims Fail Because His Loan Is Statutorily Exempt from California's Usury Laws

Even if California law applies, Plaintiff's California law claims fail because his loan is statutorily exempt from the California Constitution's usury prohibition and the CFL. As set forth in the Motion, Plaintiff's loan is exempt from the CFL for two independent reasons. **First**, because his loan is exempt from the California Constitution's usury prohibition under the express exemptions for loans originated by state-chartered banks,[9] the CFL—which merely creates *additional*

---

[9] *See* Mot. at 28:1-5, 28:26-28 (identifying exemption for state-chartered banks).

exemptions to the Constitutional usury prohibition for loans not already exempted—does not apply. (Mot. at 27:19-30:11.)  **Second**, even if the CFL applies, the CFL also expressly exempts loans originated by state-chartered banks from its scope.  (*Id* at 30:12-24.)  Further, the Motion established that California courts have roundly rejected Plaintiff's "true lender" theory as a basis for applying usury laws to assignees or acquirers of loans, which OppLoans is alleged to be here.  (*Id.* at 30:25-32:14.)  The Opposition fails to meaningfully address any of these arguments.

To start, Plaintiff misapprehends Defendants' exemption argument in order to argue against a point Defendants never made.  Plaintiff incorrectly asserts "OppLoans would have this court believe that a) it is exempt from the Constitutional usury provision **due to its status as a Finance Lender**….and b) it is exempt from the CFL itself for the same reason." (Opp. at 20:22-27 (emphasis added).)  Defendants never said anything of the sort.  Defendants do not claim to be exempt under the exemption for finance lenders.  They argue that because Plaintiff's loan is exempt from the Constitution's usury restriction by virtue of its exemption for loans originated by state banks and its provision extending that exemption to "any successor in interest to any" loan made by an exempt lender, they are also exempt from the CFL by definition.  (Mot. at 27:1-29:12.)  As explained in the Motion, the CFL itself merely creates an *additional* exemption to the Constitution's usury provision for parties that were not already exempt under existing exemptions.  *Wishnev v. The Nw. Mut. Life Ins. Co.*, 8 Cal. 5th 199, 210 (2019) (explaining that in 1979, the constitution was amended to "allow the Legislature to designate **additional classes** of exempt lenders.") (emphasis added); Cal. Fin. Code § 22002 (explaining the Legislature exercised this authority by enacting the CFL, which "creates a class of exempt persons pursuant to Section 1 of Article XV of the California Constitution.").  Because the CFL itself **only creates an additional class of lenders** exempt from the Constitution's 10% interest rate cap, **it does not apply to entities that were already exempt from it to begin with**, including FinWise (as a state-chartered bank) or OppLoans (as an alleged successor in interest to a loan originated by FinWise).  (*See* Mot. at 28:13-29:12 (collecting authority).)  Thus, while Plaintiff argues Defendants' constitutional arguments are irrelevant to his CFL claims because he "[does] not bring constitutional claims for usury" (Opp. at 20:14-17), the truth is that these arguments foreclose his CFL claims.

1    Plaintiff also has no response to Defendants' argument that even if the CFL applied,

2    Defendants would be exempt because the CFL itself exempts state-chartered banks from its scope,

3    "and California law is clear that a loan made by an exempt entity 'does not become usurious by

4    subsequent events'…such as the alleged sale of Plaintiff's loan from FinWise to OppLoans."  (Mot.

5    at 30:12-24 (citing *Strike v. Trans-W. Disc. Corp.*, 92 Cal. App. 3d 735 (1979) and *Montgomery v.

6    GCFS, Inc.*, 237 Cal. App. 4th 724 (2015)).)  In *Strike*, the California Court of Appeal explained

7    that declining to extend the exemption to subsequent acquirers and assignees would "prohibit—

8    make uneconomic—the assignment or sale by banks of their commercial property to a secondary

9    market," which "would be disastrous in terms of bank operations and not conformable to the public

10   policy exempting banks in the first instance."  *Strike*, 92 Cal. App. 3d at 745.  The California Court

11   of Appeal reiterated and reaffirmed that principle in *Montgomery*, finding that because "[u]sury

12   restrictions do not restrict the assignment of loans," the sale or assignment of a loan made by lender

13   exempted under the CFL to a non-exempt lender would not alter the terms of the loan.  *Montgomery*,

14   237 Cal. App. 4th at 732.  Plaintiff does not mention, let alone attempt to, distinguish these cases.

15   Plaintiff also fails to address the litany of cases cited in the Motion establishing that when

16   ascertaining the identity of a lender for "purposes of determining whether an exemption to

17   [California's] usury provision applies," California courts "look only to the face of the transaction at

18   issue."  (Mot. at 30:25-33:9 (citing *Beechum*, 2016 WL 5340454, at *7; *WRI*, 154 Cal. App. 4th at

19   535-36; *Jones*, 112 Cal. App. 4th at 1537-39.).)  In particular, Defendants relied on *Beechum*, a

20   2016 case flatly rejecting the very same theory on which Plaintiff proceeds here in light of clear

21   California precedent.  In *Beechum*, the plaintiff brought usury claims and also alleged that the

22   service provider defendants were the "true lenders" on the loans and thus not exempt from

23   California's interest rate cap because they had an agreement to acquire the loans shortly after

24   origination and originated, underwrote, marketed, determined the terms of, and bore the risk of loss

25   as to the loans.  *Id.* at *1-2.  The court rejected the argument that it should "look[] to substance over

26   form" to identify the lender, and instead found that under California appellate authority, "the Court

27   must look only to the face of a transaction when assessing whether it falls under a statutory

28   exemption from the usury provision."  *Id.* at *7-8 (citing *Jones*, 112 Cal. App. 4th at 1537-38; *WRI*,

154 Cal. App. 4th at 536).  Accordingly, because (as here) "the FAC allege[d] Plaintiffs' loans were issued by a bank," the court "conclude[d] the loans are exempted from California's usury prohibition." *Id.*  The Motion discussed *Beechum*, *WRI*, and *Jones* at length, and argued that their holdings apply equally to the constitutional usury prohibition and the prohibition set out in the CFL, which is part of the same comprehensive regulating usury and interest rates.  (Mot. at 30:27-33:3.)  Plaintiff does not even mention these cases in his Opposition, let alone distinguish them.  They represent the current state of the law in California and must be followed.

Having failed to address any of the arguments Defendants actually made, Plaintiff instead argues against straw men and argues Defendants violated various CFL provisions.  None of these arguments have any merit.  To start, Plaintiff's argument that OppLoans meets the definition of a "finance lender" under the CFL (Opp. at 19:1-24) is irrelevant because Plaintiff's loan is exempt.  His argument that Defendants violated the CFL's anti-evasion, anti-subterfuge, and unconscionability provisions (Opp. at 20:2-24:13) fail for the same reason.  Equally irrelevant is Plaintiff's focus on the fact that OppLoans has a license to lend under the CFL.  Plaintiff's loan is all that is relevant here, and the law is clear that the exemption to California's usury laws that applies under the Constitution and the CFL follows a loan in the event of a sale or assignment, which is what is alleged here.  Further, while not actually relevant here in light of the exemption, OppLoans does dispute it meets the definition of a "finance lender" with respect to Plaintiff's loan.  By Plaintiff's admission, it did not extend him credit or take security for his loan, the two activities the CFL identifies as examples of being in the business of lending.  Cal. Fin. Code § 22009.

Nor is there any merit to Plaintiff's argument that by qualifying for statutory exemptions and falling within the scope of Section 27's preemptive force, OppLoans violated the CFL's anti-evasion or anti-subterfuge provisions.  The *purpose* of a statutory exemption is to protect or exclude a class of persons from compliance with the law.  If it is "subterfuge" or "evasion" to make use of California's statutory exemptions to the usury restrictions, then those provisions would swallow the exemptions whole.  *Consumer Fin. Protec. Bureau v. CashCall, Inc.*, No. CV15-07522-JFWRAOX, 2018 WL 485963, at *12 (C.D. Cal. Jan. 19, 2018) (rejecting argument that Defendants created a loan program "to avoid state licensing and usury laws" because "businesses are generally free to

structure their affairs as they see fit" and "companies frequently structure business operations and transactions to minimize exposure to unfavorable laws and regulations") (citing *Ratzlaf v. United States*, 510 U.S. 135, 145 (1994) ("Courts have noted many occasions on which persons, without violating any law, may structure transactions in order to avoid the impact of some regulation")).  It likewise cannot be "evasion" or "subterfuge" to qualify for preemption under federal law.  Any state law that purported to make it unlawful to invoke the protection of Section 27 would be conflict preempted.  *Pac. Gas. & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) ("state law is preempted to the extent that it actually conflicts with federal law"); *see also Sawyer*, 23 F. Supp. 3d at 1361-70, 1373 (finding Section 27 preempted claim for violation of Financial Code section 22324, the "anti-evasion" provision of the CFL).

Finally, Plaintiff's argument that OppLoans violated the CFL's prohibition on "indirectly" receiving interest above the rate cap fails for the same reasons.  The loan is exempt.  And even if it were not, the CFL cannot be read to nullify its own statutory exemptions by making it actionable "indirect" receipt of usurious interest when an exemption applies.  Such an interpretation is forbidden by "well-established principles of statutory construction [that] preclude judicial construction that renders part of the statute meaningless or inoperative."  *Nativi v. Deutsche Bank Nat'l Tr. Co.*, 223 Cal. App. 4th 261, 284 (2014) (marks omitted).

### 3.    Plaintiff's "Alternative" Utah Law Claims All Fail

As noted above, Section 27 preempts Plaintiff's Utah law unconscionability claims, which he now purports to only bring against FinWise. (*Supra* at 14-15.)  But even if they were considered on their merits, these claims all fail because Plaintiff has failed to state a claim for unconscionability as a matter of Utah law.  Specifically, Plaintiff has not alleged *any* substantive unconscionability recognized in Utah, and his procedural unconscionability claims are insufficient.

The only substantive unconscionability Plaintiff alleges is the amount of the interest rate on his loan.  But as explained in the Motion, while Utah once followed states like California by setting interest rate caps, it changed its approach beginning in 1985 by abolishing its interest rate cap and then expressly permitting parties to contract for "any" interest rate.  Utah Code Ann. § 15-1-1 ("parties to a lawful . . . contract may agree upon any rate of interest for the contract, including a

contract for a . . . loan." ); Utah Code Ann. § 70C-2-101 ("[e]xcept where restricted or otherwise covered by provisions of this title, the parties to a consumer credit agreement may contract for payment by the debtor of any finance charge and other charges and fees."); Stephen L. West, *The Utah Consumer Credit Code: Where Did It Come From, Why Is It Here, and Where Is It Going*, 1 BYU J. PUB. L. 1, 3 (1986-1987) (explaining Utah legislators revised the state's laws to be "based on the premise that parties to any consumer credit transaction are free to contract for any finance charge which they agree upon; finance charge ceilings have been completely removed."). These laws reflect Utah's public policy "interest in respecting contractual freedom." *Sawyer*, 2010 WL 11492736, at *4–6 (contrasting the absence of any interest rate cap under Utah law with California's laws).

This legislative history forecloses Plaintiff's argument that the interest rate he agreed to renders his loan substantively unconscionable. Under Utah law, a contractual term is only substantively unconscionable if it is "so unfair or oppressive in its mutual obligations as to shock the conscience." *Resource Mgt. Co. v. Weston Ranch and Livestock Co., Inc.*, 706 P.2d 1028, 1044 (Utah 1985). Given the Utah legislature's clear policy choice to permit parties to a loan agreement to contract for "any" interest rate, a judicial decision finding the interest rate parties mutually agreed to substantively unconscionable would require concluding that conduct Utah law expressly permits would "shock the conscience and confound the judgment of any man of common sense." *Id.* at 1041. Such a decision would be directly contrary to the will of the legislature. For that reason, Defendants have located no Utah case since the abolition of the interest rate cap in 1985 finding a contract unconscionable based on amount or size the interest rate, **and Plaintiff cites none.** In sum, because Sections 15-1-1 and 70C-2-101 of the Utah Code allow parties to contract at **any** interest rate, there is nothing substantively unconscionable about the parties' agreed-to interest rate. And without substantive unconscionability, these claims fail. *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998) (finding that while "substantive unconscionability alone may support a finding of unconscionability . . . procedural unconscionability without any substantive imbalance will rarely render a contract unconscionable.") (citing *Sosa v. Paulos*, 924 P.2d 357, 361 (Utah 1996)).

Plaintiff's Opposition completely ignores this Utah legislative history. It does not even

1    address the removal of Utah's interest rate cap.  And as noted, it cites no case following these

2    legislative developments supporting his position that a loan can be unconscionable based upon the

3    rate of interest charged.  Instead, Plaintiff continues to cite to plainly inapplicable authority that

4    predates the removal of Utah's interest rate cap by decades or is plainly irrelevant.  (Opp. at 33:13-

5    18 (citing cases from 1911 and 1912 and more recent cases that do not support his position at all.).)

6    Notably, Defendants distinguished all of these cases in the Motion (because they were cited in the

7    FAC) and demonstrated they are not remotely on point.  (Mot. at 36:3-13.)  Plaintiff ignores these

8    distinctions and simply copy-pastes his citations from the FAC into his Opposition.  But the

9    distinctions stand.  These cases are inapposite and irrelevant for the reasons stated in the Motion.

10          Plaintiff's invocation of *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966 (2018) is equally

11   spurious.  (Opp. at 3:1-6.)  *CashCall* analyzed **California** law.  It cannot support a claim for

12   unconscionability under **Utah** law where the relevant law is materially different.  Further, the

13   rationale of *CashCall* does not apply here: in *CashCall*, the court held that where there was

14   legislative silence in California as to the interest rate cap on certain loans, a plaintiff could allege a

15   claim for unconscionability based in part on the interest rate.  *Id.* at 987 (under California law, "[t]he

16   absence of a rate cap on loans of at least $2,500 does not make all rates lawful, for all purposes,

17   under all regulations.").  Utah law is not merely silent as to the permissible interest rate on Plaintiff's

18   loan.  Rather, it **expressly permits** the parties to contract for **"any"** interest rate (*see supra* at 20-

19   21), reflecting a legislative decision wholly different than the one analyzed in *CashCall.*

20          In addition to doubling down on these irrelevant cases, Plaintiff makes a number of other

21   arguments that should be dismissed out of hand.  *First*, Plaintiff mischaracterizes Defendants'

22   position as being that "consumer credit contracts and their terms are immune from unconscionability

23   analysis" or that "a contract to loan money at interest can never be found unconscionable."  (Opp.

24   at 30:3-4, 31:28-32:1.)  These are straw men; Defendants argued no such thing.  They argued that

25   under clear Utah law, the size of an interest rate alone is insufficient for a finding of substantive

26   unconscionability.  (Mot. at 34:22-36:2.)

27          *Second*, while Plaintiff claims the FAC "attack[s] the loan agreements based on multiple

28   grounds for unconscionability, not simply for excessive interest" (Opp. at 27:22-23), this argument

1   ignores the distinction between procedural and substantive unconscionability.  The only *substantive*

2   unconscionability Plaintiff alleged is the "excessive interest rate," which is not substantively

3   unconscionable as a matter of Utah law.  This failure alone defeats his effort to invalidate his

4   agreement on unconscionability grounds.  (*Supra* at 21 (citing *Ryan,* 972 P.2d at 402 ("procedural

5   unconscionability without any substantive imbalance will rarely render a contract

6   unconscionable").).)

7        Plaintiff's remaining unconscionability allegations are solely about procedural

8   unconscionability.  (FAC ¶ 99 (alleging Plaintiff's loan agreement was a "contract[] of adhesion"

9   that was "drafted on standard forms with terms dictated by Defendants and generated automatically

10  online or otherwise electronically, without any opportunity by the borrower for individual

11  negotiation or modification.").)  But Plaintiff completely fails to respond to Defendants' procedural

12  unconscionability arguments, which demonstrate the minimal procedural unfairness Plaintiff alleges

13  is insufficient as a matter of Utah law.  (Mot. at 36:14-37:18.)  Plaintiff's continued reliance on

14  conclusory allegations of procedural unconscionability in response to clear evidence otherwise is

15  insufficient.  *See Ryan*, 972 P.2d at 404 (facts that acknowledgement form and accompanying

16  handbook were drafted solely by employer and employee did not have an opportunity to negotiate

17  the terms he agreed to "alone d[id] not render the acknowledgment unconscionable").

18        *Third*, Plaintiff's statutory arguments lack merit.  To begin with, Plaintiff's focus on the

19  word "lawful" within Section 15-1-1 of the Utah Code is misplaced.  (Opp. at 30:8-10.)  That code

20  section permits "parties to a . . . lawful contract [to] agree upon any rate of interest for the contract,

21  including a contract for a . . . loan."  Plaintiff asks this court to read the word "lawful" to prohibit

22  interest rates that are too high.  But that reading would render the statute a meaningless tautology

23  given that it permits parties to agree to "**any** rate of interest."  Read in context, the word "lawful"

24  properly is understood to exclude *illegal* contracts.  Plaintiff's contrary interpretation renders the

25  statutory permission to agree to "any" interest rate "superfluous," in violation of "basic principles

26  of statutory interpretation."  *Dillon v. S. Mgmt. Corp. Ret. Tr.*, 326 P.3d 656, 670 (Utah 2014).

27        Similarly, Plaintiff's assertion that the Utah Consumer Credit Code ("UCCC") "would make

28  no sense if [it] allowed moneylenders to set any rate of interest they pleased" (Opp. at 31:21-23) is

wrong.  There is no doubt—and Defendants do not dispute—that the UCCC provides remedies for unconscionable contracts.  *See* Utah Code Ann. § 70C-7-106.  But contracts can be unconscionable for reasons *other* than a high interest rate.  Indeed, Plaintiff's own cases demonstrate this.  *See, e.g.*, *Sheedy v. BSB Properties, LC*, No. 2:13-cv-00290-JNP, 2016 WL 6902513, at *5 (D. Utah Mar. 1, 2016) (finding an indemnity contract exposing someone to unlimited personal liability potentially unconscionable); *Danjanovich v. Robbins*, No. 2:04-cv-623 TS, 2005 WL 2457090, at *1 (D. Utah Oct. 5, 2005) (determining a fraudulently promised rate of return was unconscionable).  Thus, there is no conflict between Defendants' position and the UCCC; it can and does simultaneously allow *any* rate of interest and disallow other unconscionable terms.  Likewise, the fact that the UCCC allows for penalties for excess charges does not mean interest rates are capped.  (Opp. at 31:19-21, 32:13-23.)   The penalty for excess charges exists because the rest of the statutory section sets numerous other specific charges and limits beyond interest rates.  *See, e.g.*, Utah Code Ann. §§ 70C-2-102 (delinquency charges), 103 (deferral charges), 105 (attorney's fees).  The penalty provision applies when a party violates these provisions by charging in excess of what the UCCC allows.

     *Fourth*, Plaintiff's attempts to attack Defendants' authority fall flat.  Plaintiff spends three pages discussing why "it was deceptive for [Defendants] to selectively cite [*Bekins Bar V Ranch v. Huth*, 664 P.2d 455 (Utah 1983)]" because it supposedly "[drew] this Court's attention only to the – out of context – quote pertaining to interest rates."  (Opp. at 33:23-35:9.)  But Defendants quoted *Bekins* accurately, and the context Plaintiff purports to provide does not change that under Utah public policy, courts will not "reliev[e] one side or another from the effects of a bad bargain." *Bekins,* 664 P.2d at 459.  On the other hand, Plaintiff's quotation of unconscionability factors for loans discussed in *Bekins* (Opp. at 34:10-16) is plainly inapposite because it predates Utah's removal of its interest rate cap as well as the enactment of Sections 15-1-1 and 70C-2-101 by several years.  Plaintiff's critique of the Motion's citation to *Cantamar, L.L.C. v. Champagne*, 142 P.3d 140 (Utah 2006) fares no better.  While Plaintiff asserts Defendants' reading of the case is "questionable" (Opp. at 35:24), the court explicitly stated that "parties to a lawful contract may agree upon any rate of interest," 142 P.3d at 151, which is what Defendants cited it for.  (Mot. at 35:25-27.)  Plaintiff's related attack on the Utah Department of Financial Institutions' website is also unfounded.  That

page states "Utah law does not specify an interest rate ceiling" and lists an APR of 120% as "available in Utah."[10]  The page was cited accurately, and it demonstrates Utah clearly contemplates triple-digit rates of interest under its statutory framework, despite whatever conclusory claims Plaintiff makes to the contrary.

*Fifth*, and finally, Plaintiff's attempt to survive dismissal by relying upon Utah procedural rules fails.  Plaintiff's assertion that "if this Court determines that Utah law governs, it should 'afford a reasonable opportunity to present evidence' and deny the Motion" pursuant to Utah Code § 70C-7-106 is without merit.  (Opp. at 33:7-9.)  But by its own terms, Utah Code § 70C-7-106 only "applies to any actions or other proceedings brought in this state."  *Id.* § 70C-1-203.  This is not an action "brought in th[e] state" of Utah, so the section on which Plaintiff relies is facially inapplicable.  In any event, under the *Erie* doctrine, "federal courts exercising diversity jurisdiction must follow state substantive law and federal procedural law when adjudicating state law claims."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).  A state substantive law is one that "would 'significantly affect' the litigation's outcome."  *Id.* (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).  Section 70C-7-106(2) does not rise to the level of a substantive law because far from "significant[ly] affect[ing] the litigation's outcome," it simply sets out rules around discovery.  Federal courts routinely find that statutes such as this one requiring evidentiary hearings are procedural in nature because they regulate the conduct of the proceeding, not the substantive standards that govern it. *See, e.g.*, *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1182 (S.D. Cal. 2010) ("[B]ecause the Court finds that Cal. Civ. Code § 1714.10 is procedural in nature, the Court declines to apply it here."); *Hervochon v. Iona Coll.*, No. 14 Civ. 6017 (CS) (PED), 2019 WL 2451431, at *15 (S.D.N.Y. Feb. 15, 2019) (holding that New York law requiring evidentiary hearing for attorneys' fee awards was procedural in nature).  For the same reasons, this Utah procedural statute does not apply here.

For all of the foregoing reasons, Plaintiff's Utah law claims fail and must be dismissed.

---

[10] *See Interest Rates*, Utah Dep't of Fin. Insts., https://dfi.utah.gov/general-information/consumer-tips/interest-rates/ (last visited Dec. 15, 2020).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### 4.       Plaintiff's EFTA Claim Fails

The Court should dismiss Plaintiff's EFTA claim with prejudice because the FAC fails to allege Defendants conditioned Plaintiff's extension of credit on his agreement to repay it by preauthorized electronic funds transfers ("EFTs").  As Defendants argued in the Motion, while the FAC purported to point to provisions of the loan agreement requiring repayment by EFTs, those provisions pertain only to one-time fees, such as overdraft fees, which cannot support a claim under the EFTA.  (Mot. at 38:21-39:9 (collecting cases).)  Indeed, Plaintiff's loan agreement specifically provides that his extension of credit **is not** conditioned on repayment by EFTs and makes him aware of multiple alternative payment options, including paper check.  (Mot. at 38:9-20.)

Plaintiff has no answer for either of these arguments in his Opposition.  Instead, he doubles down on his "information and belief" allegation that Defendants "condition. . . loan proceeds [on] borrowers who agree to repay the loan using automated payments."  (FAC ¶¶ 231-32.)  But courts cannot credit "information and belief" pleading unless a plaintiff "first establish[es] at least a prima facie showing of a plausible claim and practical barriers to obtaining supporting evidence absent discovery."  *Menzel v. Scholastic, Inc.*, Case No. 17-cv-05499-EMC, 2018 WL 1400386, at *4 (N.D. Cal. Mar. 19, 2018).  Plaintiff cannot meet that burden.  Plaintiff is a borrower who applied for and obtained a loan from FinWise.  If Defendants *actually* conditioned the approval of his loan on his agreement to repay by electronic fund transfers, he would know it and be able to allege it.  There would be an email, call, or contractual provision communicating that requirement.  Yet Plaintiff alleges no such communication, and the only communication he does allege to support his claim in the FAC—his loan agreement—shows the opposite.  Because his allegations in the FAC and his Opposition demonstrate he cannot allege facts sufficient to demonstrate that one or both Defendants conditioned his extension of credit on an agreement to repay his line of credit by EFTs, his EFTA claim should be dismissed.

#### C.       The Motion Disposes of All of Plaintiff's Claims

In the Opposition, Plaintiff asserts that his California UCL claims premised on violation of (1) the California False Advertising Law ("FAL"); (2) the UCL's fraud prong; and (3) the UCL's unfair prong survive even if the Court agrees with Defendants' preemption and California law

1    arguments.  (Opp. at 5:24-6:13.)  Plaintiff is wrong.  None of these claims survive.

2         *First*, Plaintiff's UCL claim premised on violations of the FAL and the UCL's fraud prong

3    must be dismissed because they are entirely derivative of his claim that Defendants violated the

4    CFL.  Specifically, Plaintiff claims Defendants violated the FAL by misrepresenting information

5    concerning the identity of the true lender of his loan, the interest-rate limitation applicable to his

6    loan, and the legality of the interest rate charged.  (FAC ¶¶ 72-78; 177-179; 200-205.)  Similarly,

7    he alleges Defendants violated the UCL prong by misrepresenting the legality of the interest rate

8    charged.  (*Id.* ¶¶ 202-203.)  As explained above, FinWise is the lender on Plaintiff's loan and

9    Plaintiff's "true lender" theory is preempted by federal law and rejected by California courts.  And

10   the interest rate Plaintiff agreed to is legal under both Federal and California law.  Thus, these

11   derivative claims fail for the same reasons Plaintiff's other interest rate claims under the CFL fail.

12        *Second*, while Plaintiff claims that his UCL claims "arising under the Unfair prong of the

13   UCL" survive "to the extent the unfairness did not directly relate to the rate of interest charged, but

14   rather the other unfair, deceptive, and evasive conduct alleged," (Opp. at 6:11-13), it is unclear

15   exactly what he is referring to.  To the extent it is the derivative allegation that Defendants

16   "deceived" Plaintiff about the legality of the loan or the identity of the "true lender," it fails for the

17   reasons discussed above.  Alternatively, to the extent it is his claim that the loan is unconscionable

18   under California law, that claim is preempted by Section 27, as the only substantive

19   unconscionability alleged in the FAC is the rate of interest charged (FAC ¶¶ 173-76), and the law

20   in this Circuit is clear that preemption applies when a complaint "challenge[s] the 'rate of

21   interest'…charged, regardless of the state law monikers affixed to the…claims."  *Hawaii ex rel.*

22   *Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1036 (9th Cir. 2014); *Smiley v. Citibank (S.D.),*

23   *N.A.*, 517 U.S. 735, 738, 746 (1996) (affirming decision holding Section 85 of the NBA preempted

24   California "statutory and common-law claims" premised on allegation that out-of-state bank was

25   charging customers "unconscionable" late fees); *Santos v. Household Int'l, Inc.*, No. C03-1243 MJJ,

26   2003 WL 25911112, at *3 (N.D. Cal. Oct. 24, 2003) (holding a cause of action asserting an "over

27   limit fee was unconscionable because it was a flat rate fee that was too high" preempted); *Harris v.*

28   *Chase Manhattan Bank*, 35 Cal. Rptr. 2d 733, 739 (1994) (holding Section 27 preempted California

1   statutory *and common law* claims premised on interest charged by state-chartered bank and

2   explaining that "an enormous loophole in the statute would be created if states were allowed to

3   eviscerate this policy through the back door of the common law").

4        In the Opposition, Plaintiff claims he "has alleged other serious forms of substantive

5   unconscionability, including the serious matter of the attempted waiver of claims for public

6   injunctive relief" in an arbitration clause.  (Opp. at 22:3-6.)  But even if one assumes for the sake of

7   argument that the provision in question here violates *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)

8   by prohibiting customers from seeking public injunctive relief in any forum, the existence of such a

9   provision does not render an agreement *substantively* unconscionable.  It merely renders the public

10  injunctive relief waiver "invalid and unenforceable under California law."  *McGill*, 2 Cal. 5th at

11  961; *Lyons v. NBCUniversal Media, LLC*, No. CV 19-3830-MWF (JEMx), 2019 WL 6703396, at

12  *7 (C.D. Cal. Sept. 27, 2019) (explaining that *McGill* "examined whether the arbitration provision

13  was unenforceable because it was contrary to California public policy, not because it was

14  substantively unconscionable.").  Plaintiff cites to no case concluding that the mere presence of a

15  public injunctive relief waiver in arbitration agreement renders an agreement itself *unconscionable*.

16  Further, even if such a case existed, it would not apply here because as Plaintiff admits, he opted

17  out of the arbitration agreement under the terms of the loan agreement permitting him to do so.

18  (FAC ¶ 113.)  Thus, the only allegation of substantive unconscionability is the rate of interest

19  charged, and that claim is preempted.

20        Finally, to the extent Plaintiff seeks to save his "unfair" prong claim by arguing he was

21  unfairly surprised by a loan agreement that identified FinWise as his lender (Opp. at 7:1-15; 24:25-

22  28), that argument fares no better.  There is no such thing as a "surprise" or "unknown" lender claim,

23  and for that reason Plaintiff cites to no law, regulation, case, or treatise to support it.  It appears this

24  claim is premised on Plaintiff's claim that he was surprised to see FinWise identified as his lender

25  in his loan agreement, because he had applied through the OppLoans platform.  Yet Plaintiff never

26  claims he did not read the loan agreement before signing it—an obligation with which the law

27  charges him—and likewise never argues how it could be an "unfair" business practice to send a

28  customer a loan agreement that accurately identifies the lender that will be extending credit to that

1    customer.    Nor is there any merit to Plaintiff's claim that "substituting FinWise Bank for

2    Opportunity….causes a significant interest rate change" (Opp. at 7:9-13), because he admits in the

3    FAC that OppLoans' website disclosed interest rates up to 199% (FAC ¶ 73) and never alleges he

4    was presented with a loan agreement that identified OppLoans as the lender or identified a lower

5    rate than the rate identified in the loan agreement he signed.

6            Moreover, Plaintiff's claim of surprise that his loan was originated by a party other than

7    OppLoans is directly rebutted by his own allegations, which admit that OppLoans did disclose to

8    him that his loan "may be originated by…one of our **lending partners**."   (FAC ¶ 74 (emphasis

9    added).)  If one follows the web address Plaintiff cites for this quote (*Id.* at n.9), the term "lending

10   partners" is hyperlinked to the website address identified at footnote 10 of the FAC, which takes

11   prospective borrowers to a webpage that identifies FinWise as one of the lending partners their loan

12   "may be originated by."   (FAC ¶ 75, n.10 (citing https://www.opploans.com/bank-servicing/).)

13   Thus, Plaintiff's claim that Defendants "engaged in a 'bait and switch' as to the *stated* lender…at

14   the last minute" (Opp. at 7:3-10) is refuted by the facts established in the documents he cites in the

15   FAC.  Because Plaintiff's made-up "unknown" or "surprise" lender claim fails on the law and the

16   facts to establish a practice that contravenes public policy or is otherwise immoral, unethical,

17   unscrupulous, or substantially injurious, his UCL "unfair" prong claim based on this theory

18   necessarily fails.  *See Starks v. Geico Indem. Co.*, No. CV-15-5771-MWF (PJW), 2015 WL

19   12942282, at *7 (C.D. Cal. Nov. 10, 2015).

20           In sum, while Plaintiff claims Defendants' motion is merely a partial motion to dismiss, none

21   of the three categories of claims he points to actually survive.  All of his claims fail.

22   **III.    CONCLUSION**

23           For all of the foregoing reasons, Plaintiff's claims should be dismissed with prejudice.

24

25

26

27

28

1   DATED:  December 16, 2020                 BUCKLEY LLP

2

3
                                        By:   /s/ James R. McGuire
4                                             James R. McGuire
                                              Michael A. Rome
5                                             Sarah N. Davis
                                              Lauren L. Erker
6
                                              Attorneys for Defendant Opportunity Financial,
7                                             LLC, d/b/a OppLoans

8

9   DATED:  December 16, 2020                 HUDSON COOK LLP

10

11
                                        By:   /s/ Mark E. Rooney
12                                            ALLEN H. DENSON (*Pro Hac Vice*)
                                              adenson@hudco.com
13                                            MARK E. ROONEY (*Pro Hac Vice*)
                                              mrooney@hudco.com
14                                            1909 K Street Northwest, Fourth Floor
                                              Washington, DC 20006
15                                            Telephone: (202) 223-6930
                                              Facsimile: (202) 223-6935
16

17
                                              **LAW OFFICE OF LAURA SULLIVAN**
18                                            LAURA M. SULLIVAN (220529)
                                              laurasullivan@laurasullivanlaw.com
19                                            423 South Estate Drive
                                              Orange, CA 92869
20                                            Telephone: (714) 744-1522
                                              Facsimile:  (714) 744-1524
21

22                                            Attorneys for Defendant FinWise Bank

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION

Pursuant to Local Rule 5-1(i)(3), I hereby attest that concurrence of the filing of the accompanying **DEFENDANTS OPPORTUNITY FINANCIAL, LLC AND FINWISE BANK'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** has been obtained.

/s/ James R. McGuire

DEFENDANTS OPPORTUNITY FINANCIAL, LLC AND FINWISE BANK'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT