1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11
12
13

FREDERICK SIMS,

　　　　　　Plaintiff,

　　　v.

OPPORTUNITY FINANCIAL, LLC, et
al.,

　　　　　　Defendants.

Case No.  20-cv-04730-PJH

**ORDER GRANTING JOINT MOTION
TO DISMISS WITH PREJUDICE**

Re: Dkt. No. 28

14
15
16
17
18
19
20
21

　　　Defendants Opportunity Financial, LLC's ("OppLoans") and FinWise Bank's
("FinWise") (collectively, "defendants") joint motion to dismiss came on for hearing on
February 11, 2021.  Plaintiff Frederick Sims ("plaintiff") appeared through his counsel,
Caleb Marker and Flinn Milligan.  Opploans appeared through its counsel, James
McGuire and Michael Rome.  FinWise appeared through its counsel, Mark Rooney.
Having read the parties' papers and carefully considered their arguments and the
relevant legal authority, and good cause appearing, the court **GRANTS** defendants'
motion and dismisses this action with prejudice.

22

**BACKGROUND**

23
24
25

　　　On May 11, 2020, plaintiff filed the instant action against defendants in the
Alameda County Superior Court.  In it, plaintiff challenges the validity of defendants'
consumer loans and their business practices associated with issuing such loans.

26
27
28

　　　On July 15, 2020, defendants removed the action to this court.  On August 19,
2020, defendants filed a joint motion to dismiss.  Dkt. 22.  Plaintiff did not oppose that
motion.  Instead, plaintiff filed his operative first amended complaint ("FAC").  Dkt. 23.

United States District Court
Northern District of California

Defendants then filed the instant motion challenging the FAC.  Dkt. 28.

I.    **Factual Background**

    A.    **The Parties**

Plaintiff is a retired veteran living on a fixed income.  FAC ¶ 3.  He resides in Oakland and is a California citizen.  Id. ¶ 2.  OppLoans is a Delaware limited liability company with its primary place of business in Illinois.  Id. ¶ 13.  Plaintiff alleges that OppLoans qualifies as a "finance lender" within the meaning of California Financial Code § 22009.  Id. ¶ 86.  FinWise is a federally insured state bank chartered in Utah.  Dkt. 28-1 (Unopposed request for judicial notice of Federal Deposit Insurance Corporation print-out detailing FinWise's places of business); Dkt. 28-2 (Unopposed request for judicial notice of Utah Department of Financial Institutions detailing FinWise as a "State Bank[s].").

    B.    **The Alleged Rent-A-Bank Scheme**

According to plaintiff, defendants are engaged in a multistep scheme aimed at issuing high cost personal loans in violation of California law.  First, OppLoans operates a website marketing consumer loans to the public.  FAC ¶ 24.  Through such marketing, OppLoans leads consumers to believe that *it* will loan the subject funds.  The court will detail the statements made on the OppLoans website as necessary in its analysis below.

Second, and consumers' purported expectation aside, FinWise, in fact, is listed as the named "lender" on loan agreements.  Id. ¶¶ 22, 24.  According to plaintiff, FinWise serves as lender in name only.  On information and belief, plaintiff alleges that OppLoans maintains other purported "bank partners," which, similar to FinWise, serve as a nominal lender on consumer loans.  Id. ¶¶ 64, 74.

Third, following an agreement's execution, the bank partner (here, FinWise) "sells" OppLoans the rights to the subject loan.  Id. ¶ 24.  According to plaintiff, Finwise held his loan for "a very brief period of time" before it was assigned to OppLoans.  Id. ¶ 77.

Finally, as an assignee of a subject loan, OppLoans performs the remaining traditional lender functions, including servicing and collecting.  Id.  Plaintiff explains that the point of the subject arrangement is to leverage the laws of states with seemingly "lax"

2

1   interest rate restrictions (e.g., Utah) to "evade" the laws of states with stricter interest rate

2   restrictions and consumer protections (e.g., California).  Id. ¶¶ 65-70.  Plaintiff refers to

3   this sort of arrangement as "a rent-a-bank" scheme.  Id. ¶ 64.

### C.    Plaintiff's Loan Application Process and Loan Agreement

5       On February 14, 2020, plaintiff "responded to online marketing" on the OppLoans'

6   website.  FAC ¶ 93.  The marketing "did not conspicuously disclose that if funded, the

7   'lender' on the [loan agreement] would suddenly be changed to a different entity, or that

8   doing so would have a significant effect on the interest rate charged."  Id. ¶ 94.  Relying

9   on that omission, plaintiff "filled out defendants' loan application and forms online."  Id. ¶

10  97.  Plaintiff obtained a $1,500 loan with a 160 percent annual interest rate. Id. ¶¶ 6, 92.

11      The loan agreement is eight pages.  Dkt. 1-1 at 50-57.  Its last four pages

12  comprise a table outlining the scope of the agreement's arbitration provisions.  Id. at 53-

13  57.  The parties do not dispute that plaintiff properly opted out of that provision.  FAC ¶ 9.

14      The first three pages set forth the parties and terms of the agreement.  Id. at 50-

15  52.  The top of the loan agreement includes various fields.  Among them are "Lender"

16  and "Borrower."  Dkt. 1-1 at 50.  The Lender category states the following: "**Lender**:

17  FinWise Bank C/O Opportunity Financial, LLC."  Id.  It then lists OppLoans' Illinois

18  address and contact information.  Id.  Additionally, the preamble of the terms section

19  states: "The words "Lender" "We" and "us" mean FinWise Bank, an FDIC-insured bank

20  located in Utah, or any of its direct or indirect assignees."  Id.  Lastly, under the Payments

21  paragraph, the loan agreement refers to "OppLoans" as FinWise's "servicer." Id.

## II.    The FAC

23      Based on the above conduct and course of events, plaintiff alleges the following

24  eight claims against defendants:

25  •   A claim under California Business & Professions Code §§ 17200 *et. seq.*'s

26      ("§ 17200") unlawful conduct prong premised on various purported violations of

27      California law.  FAC ¶¶ 164-84.

28  •   A claim under § 17200's unfair conduct prong premised on various theories of

1    unfair conduct.  Id. ¶¶ 185-94.

2    •    A claim under § 17200's fraudulent conduct prong on various theories of

3         fraudulent conduct.  Id. ¶¶ 195-207.

4    •    A claim for declaratory relief (not premised on any authority).  Id. ¶¶ 208-13.

5    •    A claim under Utah Code § 70C-7-106 for unconscionable contract.  Id. ¶¶ 214-

6         20.

7    •    A claim under Utah Code § 70C-7-201 for "refund" of excess charges paid "due

8         to excessive, usurious, and unconscionable rates of interest" on the loan

9         agreement.  Id. ¶¶ 225-27.

10   •    A claim under Utah Code § 15-1-1(2) for reformation of contract.  Id. ¶¶ 221-24.

11   •    A claim under Title 15 U.S.C. § 1693k(1) for violation of that section's

12        prohibition on conditioning a credit extension on preauthorized electronic funds

13        transfers.  Id. ¶¶ 228-35.

14        In their motion, defendants challenge the state law claims on two independent

15   bases.  First, defendants argue that the California law claims are preempted by Title 12

16   U.S.C. § 1831d.  Dkt. 28 at 20-40.  Put simply, that section limits the claims that a

17   borrower may bring against a state-chartered bank for charging purportedly excessive

18   interest.   Second, defendants argue that, even if the California law claims are not

19   preempted, plaintiff fails to state a cognizable claim under either California or,

20   alternatively, Utah law.  Id. at 40-51.[1]  Defendants challenge the Title 15 U.S.C. 1693k(1)

21   claim on the merits.  Id. at 51-53.

22        The court agrees with defendants that all claims fail on the merits.  Given that, the

23   court need not resolve the preemption issue.  The court will analyze each claim in turn.

24

25   _____

     [1] Defendants assert that plaintiff's California law claims further fail because Utah law
26   controls this action.  Dkt. 28 at 40.  The court disagrees.  While the loan agreement
     includes a choice of law provision requiring the application of Utah law, that provision
27   applies to only the loan agreement itself.  Dkt. 1-1 at 51 ("This Note is governed by
     federal law and the laws of the State of Utah.").  Plaintiff in part bases his California law
28   claims on alleged misconduct independent of the loan agreement's terms.  Thus, the
     court will also consider the California law claims.

United States District Court
Northern District of California

**DISCUSSION**

**I.    Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

As a general matter, the court should limit its Rule 12(b)(6) analysis to the contents of the complaint, although it may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document"). The court may also consider matters that are properly the subject of judicial notice, Lee v. City of L.A., 250 F.3d 668, 688–89 (9th Cir. 2001), exhibits attached to the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims, No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

Lastly, a district court "should grant [a] plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations," however, dismissal without leave "is

5

1    proper if it is clear that the complaint could not be saved by amendment." <u>Somers</u>, 729

2    F.3d at 960.  Relevant here, the Ninth Circuit has recognized that in circumstances

3    "where plaintiff has previously amended the complaint," the district court's discretion to

4    deny further leave "is particularly broad."  <u>Metzler Inv. GMBH v. Corinthian Colleges, Inc.</u>,

5    540 F.3d 1049, 1072 (9th Cir. 2008).

6    **II.    Analysis**

7        **A.    Plaintiff Failed to State a § 17200 Claim for Unlawful Conduct**

8            **Premised on Violation of the California Financial Code**

9        Plaintiff primarily bases his § 17200 claim for unlawful conduct on violations of the

10   California Financial Code, particularly §§ 22302, 22303, and 22326.  FAC ¶¶ 164-74.  At

11   core, plaintiff alleges that defendants violated these sections by charging an excessive

12   and unconscionable interest rate in the loan agreement.  <u>Id.</u> ¶¶ 170, 173, 174.

13       The court grants defendants' motion to dismiss the § 17200 claim for unlawful

14   conduct to the extent it is premised on a violation of the California Financial Code.

15   Plaintiff failed to show that the defendants are subject to that code in the first instance.  In

16   relevant part, California Financial Code § 22050 states that:

17           This division [California Financial Code §§ 22000-22780.1]
     does not apply to any person doing business under any law of

18           any state . . . relating to banks . . .  Cal. Fin. Code § 22050(a).

19       California Civil Code § 1916 imposes civil and criminal liability for charging

20   excessive interest rates.  Cal. Civ. Code § 1916-3.  California Civil Code § 1916-5 refers

21   to that prohibition as California's "usury law."  Cal. Civ. Code § 1916-5 ("This act

22   whenever cited, referred to, or amended may be designated simply as the 'usury law.'").

23       When considering claims for violation of the usury law, a court may "look only to

24   the face of a transaction when assessing whether it falls under a statutory exemption

25   from the usury prohibition and not look to the intent of the parties."  <u>Beechum v. Navient</u>

26   <u>Sols., Inc.</u>, 2016 WL 5340454, at *7 (C.D. Cal. Sept. 20, 2016).  As Judge Bernal pointed

27   out in <u>Beechum</u>, this rule of construction derives from two California Court of Appeal

28   decisions, <u>WRI Opportunity Loans II, LLC v. Cooper</u>, 154 Cal. App. 4th 525, 536 (2007)

United States District Court
Northern District of California

1    and <u>Jones v. Wells Fargo Bank</u>, 112 Cal. App. 4th 1527, 1538 (2003).

2          In their opening brief, defendants cite all three authorities to support their position

3    that the loan agreement is statutorily exempt from California's usury law.  Dkt. 28 at 45.

4    In his opposition, plaintiff failed to proffer any reason why the court should limit such rule

5    of construction to claims brought under the California Civil Code § 1916.  Indeed, plaintiff

6    neglects **any** response to the above three authorities.  Given that, the court will extend

7    the <u>Beechum</u> rule to the claims at hand and look only to the face of the loan agreement to

8    decide whether such agreement is subject to the California Financial Code's conditions.

9          There is no question that FinWise is the lender on the loan agreement.  That

10   agreement includes a "Lender Box" and preamble.  Dkt. 1-1 at 51.  Both provisions detail

11   "FinWise" as lender.  <u>Id.</u>  FinWise is an out-of-state chartered bank.  Dkt. 28-2; Dkt. 28-4.

12   Accordingly, California Financial Code § 22050(a) exempts the loan agreement from any

13   condition set forth in California Financial Code §§ 22000-22780.  The purportedly violated

14   California Financial Code sections identified by plaintiff fall within that range.  Thus, they

15   may not support his § 17200 claim for unlawful conduct.

16         Plaintiff's counterarguments do not alter that conclusion.  First, plaintiff argues that

17   California Financial Code prohibits a lender from attempting to evade the code's

18   requirements.  Dkt. 29 at 32-33.  Thus, plaintiff suggests, defendants may not rely on the

19   loan agreement to avoid application of the California Financial Code because such

20   reliance would constitute "evasion" or "subterfuge" under § 22324 and § 22326.  <u>Id.</u>

21         Plaintiff misunderstands the law.  Whether OppLoans partners with FinWise to

22   avoid complying with the California Financial Code is beside the point.  As clearly stated

23   in <u>Jones</u>, a defendant's "intent is irrelevant" when analyzing whether a statutory

24   exemption to the usury law apply.  112 Cal. App. 4th at 1538.

25         Second, plaintiff suggests that, because OppLoans is a "financial lender" for

26   purpose of the California Financial Code, it is necessarily subject to its provisions.  Dkt.

27   29 at 30.  The court disagrees—whether OppLoans generally qualifies as a financial

28   lender is, again, irrelevant.  The particular transaction that forms the basis for the alleged

7

1  violations here is exempt.  Plaintiff fails to cite any authority that financial lender status

2  *itself* provides a basis for holding OppLoans liable under the California Financial Code.

3  Plaintiff cannot alter the legal fact that the California Financial Code statutorily

4  exempts the loan agreement from satisfying its provisions.  Given that, the court finds

5  that amendment of his § 17200 claim for unlawful conduct premised on a violation of the

6  California Financial Code would be futile.  The court dismisses that claim with prejudice.

7  **B.     Plaintiff's Remaining California Law Claims Fail**

8  One preliminary point before analyzing the remaining California law claims.  In his

9  opposition, plaintiff asserts that defendants' motion does not challenge any such claims

10  except those analyzed above.  Dkt. 29 at 16, 34-35.

11  The court agrees that defendants did not discretely address each of these

12  remaining claims.  However, the court understands that the FAC is not a paragon of

13  clarity.  It introduces a web of hard-to-discern theories of liability throughout its 235

14  paragraphs.  As detailed below, many of the remaining claims fail for legal reasons

15  similar to those undermining the viability of the § 17200 claim analyzed above.  Other

16  claims fail for reasons that fairly come within the scope of defendants' initial Rule 12(b)(6)

17  challenge and were more fully addressed by defendants in their reply.  Dkt. 30 at 35-36.

18  In light of the above, the court finds that defendants properly challenged all of plaintiff's

19  California law claims on their merits.  Accordingly, the court will analyze the viability of

20  those claims below.

21  **1.      Plaintiff May Not Rely on a Usury Theory to Support His**

22  **Remaining Claims**

23  While not expressly stated as a violation of the California Financial Code, plaintiff

24  premises at least three claims on a usury theory.  Those claims include the following:

25  • The § 17200 claim for unfair conduct premised on charging excessive interest

26  rates and attempting to evade California law through use of the "rent a bank"

27  scheme.  FAC ¶¶ 190-91.

28  • The § 17200 claim for fraudulent conduct premised on charging excessive

United States District Court
Northern District of California

interest rates.  Id.  ¶ 200.

• The claim for declaratory relief voiding certain loan agreements from defendants to members of the public.  Id.  ¶ 212.

As decided in Section II.A. above, plaintiff may not sue defendants for violation of California's usury prohibitions, regardless of whether such prohibitions arise under the California Financial Code or California Civil Code.  Although a clever move by plaintiff, the court will not permit him to rely on the more amorphous "unfair" or "fraudulent" practices prong of § 17200 to hold defendants liable for conduct that the court has already determined is not unlawful under a more specific set of legal rules.

Again, plaintiff cannot alter the legal conclusion that the California Financial Code statutorily exempts defendants from complying with its provisions when issuing the loan agreement.  Thus, the court finds that amendment of the above-referenced claims would be futile.  Accordingly, the court dismisses them with prejudice.

## 2.    Plaintiff Failed to Proffer Sufficient Facts to State His Remaining Claims Not Premised on a Usury Theory

After accounting for the dismissed claims, it appears that plaintiff is left with the following California law claims that are ***not*** based on a usury theory:

• The § 17200 claim for unlawful conduct premised on violation of California Business and Professions Code § 17500, *et. seq.* ("§ 17500") for disseminating misleading public statements concerning the nature of OppLoans' business arrangement.  FAC ¶¶ 175-79.

• The § 17200 claim for unlawful conduct premised on violation of Title 15 U.S.C. § 1693k(1).  Id. ¶¶ 180-84.

• The § 17200 claim for unfair conduct premised on misrepresenting the identity of the loan's lender.  Id. ¶ 191.

• The § 17200 claim for fraudulent conduct premised on OppLoans' partnering with out of state banks to create the appearance that such banks serve as the "actual lender" of its loans.  Id. ¶¶ 201-03.

United States District Court
Northern District of California

1    As previously indicated, California Business & Professions Code § 17200 prohibits

2    business acts that are (1) fraudulent, (2) unfair, or (3) unlawful. Cal. Bus. and Prof. Code

3    § 17200.  Similarly, § 17500 "prohibits any 'unfair, deceptive, untrue, or misleading

4    advertising.'" Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008).

5    Both § 17200 and § 17500 are "governed by the 'reasonable consumer test."

6    Williams, 552 F.3d at 938.  Under that test, plaintiff must "show that members of the

7    public are likely to be deceived."  Id.  "The California Supreme Court has recognized that

8    these laws prohibit not only advertising which is false, but also advertising which,

9    although true, is either actually misleading or which has a capacity, likelihood or tendency

10   to deceive or confuse the public."  Id.  That said, the reasonable consumer standard

11   "requires more than a mere possibility that [a challenged advertisement] might

12   conceivably be misunderstood by some few consumers viewing it in an unreasonable

13   manner."  Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016).

14              a.    **The § 17200 Claim for Unlawful Conduct Premised on**

15                    **Violation of § 17500**

16   To support his § 17200 unlawful conduct claim premised on violation of § 17500,

17   plaintiff chiefly alleges that:

18              Defendants misrepresented the nature of the lending
     arrangement with the effect of inducing reasonable borrowers
19              into loans at rates of interest many multiples of the highest cap
     allowable in California, and continue to misrepresent to existing
20              and future borrowers that these loans are lawful and collectible.
     FAC ¶ 177.
21

22   Stated simply, then, plaintiff's theory of misrepresentation is that OppLoans failed

23   to adequately disclose to consumers its partnership with FinWise when offering,

24   processing, and making loans.

25   The FAC's allegations concerning statements made by OppLoans on its website

26   undermine that theory.  First, the website describes OppLoans as "a leading financial

27   technology platform."  Id. ¶ 73.  Second, the website states that "[o]ur bank partners

28   leverage our technology platform to outsource marketing and servicing while maintaining

10

1    the critical control of loan origination, underwriting approvals, regulatory and compliance

2    oversight management."  Id. ¶ 76.

3         These descriptions impart any reasonable consumer with the impression that

4    OppLoans is a "technology platform" that performs "marketing and servicing" on behalf of

5    its "bank partners" who "maintain[] the critical control of loan origination, underwriting

6    approvals, regulatory, and compliance oversight management."  That impression is

7    further imparted by the loan agreement's description of OppLoans as FinWise's

8    "servicer." Dkt. 1-1 at 50.

9         That said, the court notes that plaintiff fairly asserts that other statements on

10   OppLoans' website might—in a vacuum—lead a consumer to conclude that OppLoans

11   (**not** some out-of-state "bank partner") would serve as his or her lender.  Such statements

12   include, for example, "Apply for Online Installment Loans Through OppLoans."  FAC ¶

13   73.  However, OppLoans did not make such potentially misleading statements in a

14   vacuum.  In light of statements like those cited above, the OppLoans' website fairly

15   indicates the role that its "bank partners" play in making a loan.

16        Finally, the court observes that, in a standalone paragraph at the end of his

17   description of this claim, plaintiff states that:

18            In addition, Defendants violated the FAL in that they failed to
19            acknowledge to consumers, such as Plaintiff, that the interest
              rates charged were unconscionable, unlawful, and thus
20            uncollectable according to, *inter alia* the California Financial
              Code [and various provisions of the Utah Code]. Id. ¶ 179.

21        To the extent plaintiff relies on this allegation as an alternative basis for an

22   underlying § 17500 violation, the court finds it insufficient.  First, plaintiff failed to proffer

23   any legal basis imposing a duty on defendants to disclose that the interest rates charged

24   are, on the merits, in excess of California's usury limits.  Second, and in any event, as

25   analyzed in Section II.A. above, defendants are statutorily exempt from such limits.

26        In short, the court concludes that plaintiff fails to state a claim plausibly showing

27   that OppLoans made statements likely to mislead a reasonable consumer about the

28   nature of its business relationship with FinWise.  Plaintiff cannot alter his allegations

United States District Court
Northern District of California

1   about the statements by OppLoans on its website.  Thus, the court finds that amendment

2   of this claim would be futile.  Accordingly, the court dismisses it with prejudice.

3               **b.     The § 17200 Claim for Unlawful Conduct Premised on**

4                     **Violation of Title 15 U.S.C. § 1693k(1)**

5        As analyzed in Section II.D. below, plaintiff failed to state a predicate claim for

6   violation of Title 15 U.S.C. § 1693k(1).  That claim is subject to dismissal with prejudice.

7   Accordingly, plaintiff may not rely on a violation of that section to support his § 17200

8   claim for unlawful conduct

9               **c.     The § 17200 Claim for Unfair Conduct Premised on**

10                    **Lender Identity**

11       To support his § 17200 claim for unfair conduct premised on misrepresenting the

12  identity of the loan agreement's finance lender, plaintiff alleges that:

> Defendants' misrepresentation of the finance lender on
> Promissory Notes is unfair as Defendants unfairly and
> abusively use that façade as a trick against
> consumers/borrowers to multiply the interest rate they are
> charged.  FAC ¶ 192.

16       In other words, plaintiff's theory is that the loan agreement is misleading because it

17  states that FinWise is the "lender" when, in fact, OppLoans serves as such lender.  The

18  viability of this theory depends on whether the court accepts plaintiff's unverified

19  allegations that, in both fact and practice, OppLoans serves as the loan's lender.  Id. ¶ 64

20  ("On information and belief, Opportunity conspires with certain third parties, including

21  FinWise Bank, to skirt California state lending laws through a fraudulent 'rent a bank'

22  enterprise."); Id. ¶ 76 ("In fact, on information and belief, it is OppLoans who determines,

23  at least in part, the terms of origination (including solicitation), underwriting standards,

24  and regulatory compliance.").

25       To support his position that the court should take those unverified allegations as

26  true for purpose of this motion, plaintiff relies on Soo Park v. Thompson, 851 F.3d 910

27  (9th Cir. 2017).  In that case, Judge Reinhardt acknowledged that:

> The Twombly plausibility standard . . . does not prevent a

1

2

3

> plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible. Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017).

4

5

6

7

8

9

10

11

12

13

14

In Park, the Ninth Circuit considered a Title 42 U.S.C. § 1983 claim brought by an acquitted criminal defendant (and then plaintiff) against a detective for purportedly conspiring to violate plaintiff's civil rights. Id. at 915. On information and belief, the Park plaintiff alleged that the detective coordinated with police from a nearby municipality to initiate charges against a prospective third-party witness for purpose of preventing the prospective witness from testifying on plaintiff's behalf at plaintiff's criminal trial. Id. at 916-17, 928. Prior to plaintiff's criminal trial, the district attorney brought charges against the witness. Id. at 917, 928. The witness nonetheless showed up to testify in plaintiff's criminal trial. Id. In response, the district attorney gave defense counsel an ultimatum: (1) instruct the witness not to testify under the Fifth Amendment or (2) face a motion to recuse. Id. The witness refused to testify in plaintiff's criminal trial. Id. at 928.

15

16

17

18

19

Based on the above course of events,[2] the panel in Park held that plaintiff adequately alleged her § 1983 claim for civil conspiracy against the detective. Id. at 928. It reasoned that plaintiff plausibly suggested that the detective coordinated with others to make the witness unavailable and "many of the relevant facts are known only to [the detective." Id. at 928-29.

20

21

22

23

24

This action is not like Park. First, the information and belief allegation at paragraph 64 is conclusory in nature. On that basis alone, the court must disregard it under Iqbal and Twombly. Second, unlike "the entire factual context" in Park, 851 F.3d at 929, the FAC, when read as a whole, does not support plaintiff's information and belief allegation at paragraph 76. To the contrary, elsewhere in the FAC, plaintiff recognizes

25

26

27

28

[2] Notably, Judge Reinhardt does not specify which exact parts of the above account are based on facts verified under Rule 11 or, alternatively, "information and belief." His treatment of the bases underlying such events also appears internally inconsistent. Compare id. at 916 ("We consider separately the facts that relate to the conspiracy claim and are **principally** alleged on information and belief) with Id. at 928 ("Based on these facts, **as well as** information and belief, Park alleged . . .") (emphasis added).

that FinWise might actually use its own money to execute a loan.  Compare FAC ¶ 24

("*To the extent FinWise advances any money to fund the high interest rate loan*, it is

promptly repaid . . .") (emphasis added).  That recognition undermines the plausibility of

any non-verified suggestion that OppLoans controls the loans formally issued by FinWise

at the time of their inception.

At oral argument, plaintiff's counsel failed to identify any fact or reason to suggest

that plaintiff could add the verified non-conclusory allegations necessary to salvage this

claim.  Instead, counsel repeated that plaintiff "thoroughly alleged" that OppLoan's

arrangement with FinWise is a sham.  The court pressed counsel for more details about

that representation.  Counsel's only substantive response was that plaintiff "assume[d]

that FinWise is compensated for [taking part in the sham] in some way."  Dkt. 51 at

30:22-23.  At least seven times in the course of his discussion of this issue, counsel

candidly acknowledged that plaintiff "does not know" other important details surrounding

the purported arrangement.  Id. at 30:18-31:20.  Under these circumstances, the court

finds that amendment of this claim would be futile.  Accordingly, the court dismisses with

prejudice the § 17200 claim for unfair conduct premised on misrepresenting the identity

of the loan agreements' finance lender.

### d.    The § 17200 Claim for Fraudulent Conduct Premised on Defendants' Partnership

To support his § 17200 claim for fraudulent conduct premised on OppLoans'

partnering with out-of-state banks to create the appearance that such banks serve as the

actual lender of its consumer loans, plaintiff alleges that:

> This fraudulent scheme has as its goal the misleading of the
> general public, including Plaintiff, by wrongfully informing them
> that their loan is not subject to California consumer protection
> laws, including § 22302-22304.5 of the Financial Code. . . these
> relationships are a sham with the dual purpose of evading
> regulatory oversight, and deceiving the general public as to the
> legality and collectability of the Consumer Loans Defendants
> fund.  Both objectives constitute fraudulent conduct sufficient
> for [§ 17200].  FAC ¶ 201.

As an initial matter, it is unclear to the court how this claim differs from the § 17200

14

claim for unlawful conduct analyzed in Section II.B.2.a.  Compare FAC ¶¶ 175-79 (alleging violation of § 17500 for misstating the nature of defendants' business relationship).  That said, it appears that this claim challenges the legality of defendants' relations (as opposed to their *representations* about such arrangement).

With that construction in mind, the court finds that plaintiff failed to state a claim.  As decided in Section II.A. above, the loan agreement is statutorily exempt from complying with the California Financial Code.  That exemption extends to the code's prohibitions on subterfuge and evasion.  Plaintiff fails to identify any applicable authority that might prohibit business relations similar to that allegedly entered into by defendants.  Thus, the premise that defendants' relationship is a "sham" lacks an actionable basis.

Plaintiff cannot alter the legal conclusion that defendants were statutorily exempt from complying with the California Financial Code's conditions when issuing the loan agreement.  As a result, the court finds that amendment of his § 17200 claim for fraudulent conduct premised on defendants' partnership would be futile.  Accordingly, the court dismisses this claim with prejudice.

### C.    Plaintiffs' Utah Law Claims Fail

In his FAC, plaintiff alleges the following three claims under Utah law:

- A violation of Utah Code § 70C-7-106 for unconscionable contracts.  FAC ¶¶ 214-20.

- A violation of Utah Code § 70-7-201 "due to excessive, usurious, and unconscionable" interest rates.  Id. ¶¶ 225-27.

- Reformation under Utah Code § 15-1-1(2).  Id. ¶¶ 221-24.

The Utah Supreme Court has explained that the "basic test" of unconscionability under Utah law is:

> Whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract . . . *The principle is one of the prevention of oppression and unfair surprise* . . . and not of disturbance of allocation of risks because of superior bargaining power.  Res.

1

<u>Mgmt. Co. v. Weston Ranch & Livestock Co.</u>, 706 P.2d 1028, 1041 (Utah 1985) (emphasis in the original).

To determine whether an agreement is unconscionable, a court "must assess the circumstances of each particular case in light of the twofold purpose of the doctrine, prevention of oppression and of unfair surprise." <u>Id.</u> "Recognition of these purposes has led to an analysis of unconscionability in terms of 'substantive' and 'procedural' unconscionability. 'Substantive unconscionability' examines the relative fairness of the obligations assumed. 'Procedural unconscionability' focuses on the manner in which the contract was negotiated and the circumstances of the parties." <u>Id.</u>

Under Utah law, "[s]ubstantive unconscionability is indicated by contract terms so one-sided as to oppress or unfairly surprise an innocent party . . . an overall imbalance in the obligations and rights imposed by the bargain . . . excessive price . . . or significant cost-price disparity." <u>Id.</u> at 1041-42. On the other hand, procedural unconscionability means the "absence of meaningful choice." <u>Id.</u> at 1042. It may be shown by various indicia, such as boilerplate language that is incomprehensible to a layman. <u>Id.</u>

The Utah Supreme Court has "acknowledged that substantive unconscionability alone may support a finding of unconscionability but that procedural unconscionability without any substantive imbalance will rarely render a contract unconscionable." <u>Ryan v. Dan's Food Stores, Inc.</u>, 972 P.2d 395, 402 (Utah 1998).

In his FAC, plaintiff materially advances only one ground for substantive unconscionability: the loan agreement's 160 percent interest rate. FAC ¶ 129 ("By way of their conduct in inserting highly substantively unconscionable terms, ***such as the extortionate interest rate***, into their consumer credit contract for Plaintiff . . . and by presenting them uniformly in a procedurally unconscionable manner, Defendants rendered such Consumer Loans unconscionable, unenforceable, and in violation of Utah Code § 70C-7-106.") (emphasis added).

Title 15 of the Utah Code regulates contracts and obligations in general. Critically, Utah Code § 15-1-1 provides the following:

The parties to a lawful written, verbal, or implied contract may

16

1
2

     agree **upon any rate of interest for the contract**, **including** a contract for services, **a loan or forbearance of any money**, goods, or services, or a claim for breach of contract. Utah Code § 15-1-1 (1) (emphasis added).

3
4

    Title 70C of the Utah Code regulates the extension of credit more specifically.

Utah Code § 70C-2-101 provides the following:

5
6
7

    Except where restricted or otherwise covered by provisions of this title, the parties to a consumer credit agreement **may** contract for payment by the debtor **of any finance charge** and other charges and fees. Utah Code § 70C-2-101 (emphasis added).

8
9
10
11

    Given the above emphasized statutory language, the court finds that plaintiff the loan's 160 percent interest rate may not serve as a legally cognizable ground for substantive unconscionability under Utah law. By their plain terms, both potentially applicable statutes permit a lender to charge **any** interest rate.

12
13
14
15
16
17
18
19
20

    Plaintiff's insistent reliance on <u>Carter v. West</u>, 38 Utah 381 (Utah 1911) and <u>Engert v. Chadwick</u>, 40 Utah 239 (Utah 1912) for the proposition that any interest rate above 50% qualifies as unconscionable is misplaced. Those authorities predated Utah's 1985 adoption of Utah Code § 15-1-1, which, as just detailed, generally permits parties to contract for any rate of interest. While plaintiff is correct that the court in <u>Danjanovich v. Robbins</u>, 2005 WL 2457090 (D. Utah Oct. 5, 2005) held that an interest rate of "100% per month" was unconscionable, the court in <u>Danjanovich</u> failed to cite any authority to support that holding. <u>Id.</u> at *5. In any event, an interest rate of 100% **per month** is multiple times greater than the 160 percent **per year** interest rate at issue.

21
22
23
24
25
26

    Plaintiff's remaining allegations concerning the substantive conscionability of this loan under Utah law are conclusory, vague, or otherwise unspecified. <u>Id.</u> ¶ 135 ("However, as discussed *supra*, the contracts contain myriad elements of high degrees of procedural and substantive unconscionability, such that courts applying Utah unconscionability law would find the contract to be unconscionable under either test."). Such general allegations may not and do not salvage plaintiff's Utah law claims.

27
28

    Lastly, in his opposition, plaintiff attempts to raise two other grounds to support his substantive unconscionability showing: (1) defendants engage in "deceptive marketing"

United States District Court
Northern District of California

1    and "use of schemes"; and (2) the loan agreement lacks a "mutuality of remedy" and

2    improperly includes a "waiver of claims."  Dkt. 29 at 42.

3         Even if the court were to treat these grounds as alleged in the FAC, neither would

4    provide a cognizable basis for substantive unconscionability.  With respect to the first

5    ground, plaintiff fails to explain how such acts qualify as terms of the loan agreement.

6    Plainly, how defendants market their services are extrinsic to that agreement.  Under

7    Utah law, procedural unconscionability is itself insufficient to render an agreement

8    unconscionable.  Ryan, 972 P.2d at 402.

9         With respect to the second ground, plaintiff fails to proffer any authority

10   recognizing that the subject terms may qualify as substantively unconscionable.  From

11   what the court can tell, substantive unconscionability under Utah law is a high bar.  Res.

12   Mgmt. Co., 706 P.2d at 1041 ("Whatever the particular formulation, the standard for

13   determining unconscionability is high, even if not precise.").  The court declines to be the

14   first to credit plaintiff's novel theory of unconscionability.

15        In short, the court finds that plaintiff failed to identify a cognizable ground to

16   support his contention that the loan agreement is substantively unconscionable under

17   Utah law.  Given that, the first Utah law claim fails.  Relatedly, Utah statutory law plainly

18   permits persons to contract for any interest rate.  Given that, the second Utah law claim

19   fails.  Because both the first and second Utah law claims fail, plaintiff lacks any basis to

20   reform his loan agreement under Utah law.  Thus, the third Utah law claim fails.

21        Plaintiff cannot alter the above justifications for dismissal by amending his FAC.

22   Given that, the court dismisses the Utah law claims with prejudice.

23        **D.    Plaintiff's Title 15 U.S.C. § 1693k Fails**

24        In relevant part, Title 15 U.S.C. § 1693k provides that no person may "condition

25   the extension of credit to a consumer on such consumer's repayment by means of

26   preauthorized electronic fund transfers."  15 U.S.C. § 1693k(1).

27        To support his § 1693k claim, plaintiff alleges the following in relevant part:

28             Upon   information   and   belief,   Defendants   condition   the

18

1

2

> electronic transfer and/or direct deposit of loan proceeds to borrowers who agree to repay the loan using automated payments. FAC ¶ 231.

3

> . . .

4

5

6

> Upon information and belief, Defendants do not allow borrowers to make regular payments by traditional check payments. Rather, Defendants require borrowers to authorize Defendants to computer generate checks bearing their account numbers. Id. ¶ 232.

7

> . . .

8

9

> Defendants do not allow borrowers to terminate automated payments online or in writing. Rather, borrowers must speak with Defendants by telephone to request terminating automated repayment. Id. ¶ 233.

10    The court finds that plaintiff failed to allege sufficient facts showing that defendants

11 violated § 1693k when administering plaintiff's loan.  Critically, plaintiff fails to allege that

12 defendants, in fact, required *him* to agree to repay his loan using automated payments.

13 FAC ¶¶ 228-35.  While plaintiff does allege that, "[a]s part of the application process,

14 defendants required plaintiff to preauthorize electronic funds transfers," id. ¶ 105, he fails

15 to specify whether such transfers for payments to defendants or for plaintiff to receive the

16 loan funds.  That failure is critical because only the former supports a plausible claim for

17 relief.

18    Plaintiff's "information and belief" allegations about defendants' purported practice

19 of requiring *others* to agree to such a condition are beside the point.  Other unspecified

20 borrowers did not bring this action—plaintiff did.  *Plaintiff* must know whether defendants

21 sought to require *him* to agree to this condition.  Because he did not affirmatively allege

22 that fact, the only inference to draw is that defendants did not seek to condition the loan

23 agreement on plaintiff's agreement to repay the loan through preauthorized transfers.

24    Moreover, this inference is supported by the terms of the loan agreement itself.

25 That Payment Authorization section of that agreement plainly states that:

26

27

28

> The payment method checked below is based on your previous selection during the application process. However, *you may choose* to repay by any other reasonable method of payment that we permit, *including paper check*. If you wish to change your payment method, *you may contact us* by communicating

with OppLoans at (855) 990-9500 *or info@opploans.com* and
you will be provided instructions on how to make your payment
. . .  Dkt. 1-1 at 50 (emphasis added).

Given the above, the court dismisses the § 1693k claim to the extent plaintiff premises it on the theory that defendants required him to agree to repay the loan through preauthorized electronic transfers or barred him from using traditional methods for such repayment.

Plaintiff's remaining theory in support of this claim is legally deficient.  By its terms, § 1693k(1) extends to only the "repayment" of "credit." 15 U.S.C. § 1693k(1).  That section does not prescribe or otherwise require a creditor to permit specific means (e.g., "online" or "in writing") for a borrower to terminate any preexisting automated payments. In any event, as detailed above, the terms of the loan agreement itself specifically provide an OppLoans email address that plaintiff may contact to change his payment method. Thus, to the extent plaintiff premises his § 1693k claim on the theory that defendants barred him from changing his payment options through online or written means, it fails.

As indicated above, plaintiff's existing allegations concerning this claim tend to affirmatively show that defendants did not subject his loan to conditions prohibited by § 1693k.  As a result, the court finds that amendment of this claim would be futile. Accordingly, the court dismisses it with prejudice.

## CONCLUSION

For the above reasons, the court **GRANTS** defendants' joint motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: April 13, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California